IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOSEPH PITTS, #A0259019, | Civ. No. 20-00431 LEK-KJM |
| Plaintiff, | ORDER DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE TO AMEND |
| v. | |
| NOLAN ESPINDA, et al., | |
| Defendants. | |

**ORDER DISMISSING COMPLAINT**
**IN PART WITH PARTIAL LEAVE TO AMEND**

Before the Court is pro se Plaintiff Joseph Pitts' ("Pitts") prisoner civil rights

complaint asserting claims under 42 U.S.C. § 1983 and state law.[1]  ECF No. 1.

Pitts alleges that Defendants, officials of the Department of Public Safety ("DPS")

and Oahu Community Correctional Center ("OCCC"),[2] violated the law during his

---

[1]  Section 28 U.S.C. § 1343(a)(3) grants this Court jurisdiction to consider Pitts' claims under 42 U.S.C. § 1983, and 28 U.S.C. § 1367 grants the Court supplemental jurisdiction over all other claims that are "so related to claims in the action . . . that they form part of the same case or controversy[.]"  Although Pitts cites "28 U.S.C. 1997(d)" as an additional basis of jurisdiction, there is no such section.  To the extent Pitts also cites 42 U.S.C. § 1981 (prohibiting racial discrimination by private actors), and 42 U.S.C. § 1986 (authorizing a remedy against state actors who have negligently failed to prevent a conspiracy that would be actionable under 42 U.S.C. § 1985), those provisions are irrelevant based on Pitts factual allegations.  Likewise, Chapter 353 of the Hawai'i Revised Statutes and 18 U.S.C. § 3626 (titled "Appropriate remedies with respect to prison conditions") are not bases for jurisdiction in this court.

[2]  Pitts names in their individual and official capacities Nolan Espinda, Francis Sequiera, Caesar Altaris, Lei Silva, Calvert Williamson, Ahn Uedoi, Urita Levi, Jessica Ashley Fernando, Sergeant Anderson, Psychologist Hashimoto, Psychologist Micah, Mail Clerk Jesse, ACO Kami,

current pretrial confinement at OCCC.  For the following reasons, the Complaint is

DISMISSED in part with partial leave granted to amend.

## I. <u>STATUTORY SCREENING</u>

The Court is required to screen all in forma pauperis prisoner pleadings

against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).

*See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or

complaints that are frivolous, malicious, fail to state a claim for relief, or seek

damages from defendants who are immune from suit must be dismissed.  *See*

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v.*

*Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same

standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).

*See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under

this standard, a complaint must "contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks and citation omitted).  A claim is

---

ten unidentified "mailroom staff," and ten other unidentified defendants.  *See* ECF No. 1 at
PageID # 1–2.  Pitts does not mention, however, Hashimoto or Micah in any of his factual
allegations.  Any claims against them are DISMISSED with leave granted to amend.  Although
the Court granted Pitts' motion to add Dr. Gavin Takenaka and Amy Jodar as defendants, *see*
ECF Nos. 5, 6, Pitts does not say how any of his factual allegations relate to them.  Any claims
against Takenaka and Jodar are also DISMISSED with leave granted to amend.

"plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

Rule 12 is read in conjunction with Rule 8(a)(2) when screening a complaint; Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citation omitted).  The "mere possibility of misconduct," or an "unadorned, the defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard.  *Id.* at 678–79 (citations omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. <u>BACKGROUND</u>[3]

Pitts is a pretrial detainee at OCCC.  On October 7, 2020, the court received his five-count Complaint.  ECF No. 1.

In Count I, Pitts alleges a range of violations by Espinda, Sequiera, Altaris, Anderson, and ten unnamed defendants.  *See* ECF No. 1 at PageID # 5.  Pitts generally claims that these Defendants: (1) failed to train adequately staff on how to care for inmates with mental health issues; (2) failed to protect inmates from "harm, abuse, denial of food, [and] denial of water"; (3) failed to "operate, monitor, and administrate" properly staff in the mental health module; (4) failed to "stop, curb, and/or eradicate" the "physical abuse, food deprivations and violence" against inmates with mental health issues; (5) intentionally decided not to install more security cameras at OCCC; (6) failed to establish policies and procedures "to address and correct the repeated constitutional violations at OCCC"; (7) allowed existing policies and procedures to remain in place; and (8) consciously disregarded "the risk to inmates['] safety, well being[,] and denial of human rights."  *Id.*  In support of these claims, Pitts submits a summary of alleged mistreatment experienced by other OCCC inmates.[4]  *Id.* at PageID # 6–11.

---

[3] Pitts' factual allegations are accepted as true.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[4] Although Pitts briefly alleges in Count I that he faced harm at OCCC because he had submitted "numerous complaints" and "numerous grievances," he had been attacked "more times that he can list," and prison officials stopped and interfered with his mail, and "impede[d] his

In Count II, Pitts alleges that Williamson and Uedoi violated his rights during a February 10, 2020 adjustment hearing.[5]  *Id*. at PageID # 12–13.  During the hearing, Pitts was charged with and found guilty of fighting with another person.  *Id*.  According to Pitts, two gang members had attacked him "in retaliation for his complaints and grievances against [OCCC]."  *Id.*  Pitts claims that he acted in self-defense.  *Id*.  Pitts asserts that he "is a target" and he "has an active hit on his life[.]"  Id. at PageID # 13.  According to Pitts, he asked to call two witnesses who would have corroborated his version of events, but they were not called during the hearing.  *Id*.  Pitts also claims that he requested surveillance camera footage, but he was not allowed to see it and it was not presented during the hearing.  *Id*.

In Count III, Pitts alleges that his rights were violated also during a July 9, 2020 adjustment hearing.  *Id*. at PageID # 14–15.  During this hearing, Pitts was charged with and found guilty of assaulting a person without a weapon or dangerous instrument.  *Id*. at PageID # 14.  Pitts claims that he was fighting with

---

communications with the courts and outside world," ECF No. 1 at PageID # 8, the same claims are more fully developed in the other Counts of his Complaint.  The Court therefore considers them there.

[5]  At various points in Count II, Pitts describes Sergeant Defiesta's involvement with the February 10, 2020 adjustment hearing.  Defiesta, however, is not named as a defendant.  Pitts also claims that Sergeant Heick moved a gang member into his cell after he complained about Heick.  *Id.* at PageID # 13.  Pitts does not name Heick as a defendant.

another inmate in OCCC's kitchen when Officer Lamie (who is not named as a defendant) ordered the inmates to move into a cell, where the inmates were locked inside. *Id*. Pitts asked to call two witnesses, but they were not called during the hearing. *Id*. Pitts also claims that he requested surveillance camera footage that would have shown where the fight began, where it ended, and the location of correctional officers at the time, but the video was not reviewed during his hearing. *Id*. Pitts further claims that he was not allowed to provide a written statement in his defense. *Id*.

In Count IV, Pitts alleges that Silva, Kami, Jesse, and other unidentified defendants opened his properly marked legal mail outside his presence, delayed his outgoing mail, and delayed or returned his incoming personal mail. *Id*. at PageID # 16–18. Pitts claims that properly marked legal mail from an attorney was opened outside his presence on January 31, 2020, February 1, 2020, and September 5, 2020.[6] *Id*. at 17–18. Pitts also claims that outgoing legal mail he had given to prison officials on August 12, 2020, was not mailed until August 25, 2020, and a habeas petition he had provided to prison officials on September 3, 2020, was not mailed until September 9, 2020. *Id*. at PageID # 18. Pitts further claims that some of his incoming personal mail was returned as undeliverable. *Id*. at PageID # 17.

---

[6] Although Pitts also alleges that prison officials opened mail from an attorney on February 7, 2020, he does not claim that this mail was properly marked as legal mail. *See* ECF No. 1 at PageID # 16.

6

In Count V, Pitts alleges that Espinda, Altaris, Sequiera, Silva, and other unidentified defendants: (1) failed to train adequately and supervise mailroom staff; (2) failed to protect him from retaliation and reprisal; (3) failed to protect his constitutional rights; (4) failed to enforce mailroom policies and procedures; (5) failed to address and correct "repeated violations of mail procedures and adjustment hearing procedures"; and (6) consciously disregarded risks to his rights. *Id*. at PageID # 19.

Pitts asks for: (1) surveillance cameras throughout OCCC, (2) unspecified "changes" to protect inmates and remodeled sinks in certain cells; (3) Anderson to be reassigned or prosecuted; (4) the guilty findings from his two adjustment hearings to be expunged; (5) immediate transfer to the Federal Detention Center-Honolulu ("FDC"); (6) outside medical care for "broken disfigured fingers"; and (7) compensatory damages. *Id*. at PageID # 21.

### III. <u>DISCUSSION</u>

#### A. Legal Framework for Claims under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged

deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167 (9th Cir. 1980). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted). Thus, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and must affirmatively link that injury to the violation of his rights.

## B. Eleventh Amendment Immunity

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-03 (1984). It does not bar official-capacity suits for prospective relief to enjoin alleged ongoing violations of federal law. *See Wolfson v. Brammer*, 616 F.3d 1045, 1065-66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). Nor does it bar suits for damages against state officials in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Pitts names all Defendants in both their official and individual capacities. *See* ECF No. 1 at PageID # 1.  To the extent Pitts seeks monetary damages from Defendants in their official capacities, *see id.* at PageID # 21, those claims are barred by the Eleventh Amendment and DISMISSED with prejudice.  Pitts' request for monetary damages from Defendants in their individual capacities and prospective, injunctive relief from Defendants in their official capacities, *see id.*, are not barred by the Eleventh Amendment.

**C. Transfer to the Federal Detention Center-Honolulu**

Pitts asks the Court to order his transfer to FDC.  ECF No. 1 at PageID # 2.  It is well established that "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State[.]"  *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (footnote omitted).  Courts routinely conclude, therefore, that they lack the authority to transfer an inmate from one facility to another.  *See*, *e.g.*, *Pitts v. Espinda*, CIV. NO. 15-00483 JMS-KJM, 2018 WL 1403881, at *3 (D. Haw. Mar. 20, 2018) ("Plaintiff has no legal right to be transferred to the FDC, Waiawa, Kulani, or any other prison facility."); *Kealoha v. Espinda*, No. 20-00323 JAO-RT, 2020 WL 5602837, at *4–7 (D. Haw. Sept. 18, 2020) (concluding that court lacked the authority to transfer pretrial detainee to FDC); *Moore v. Gipson*, Case No. 1:13-cv-01820-DAD-BAM (PC), 2017 WL 2992529, at *3 (E.D. Cal. Apr. 19, 2017) ("[T]he Court does not have the authority to compel Plaintiff's

transfer from Corcoran State Prison to Kern Valley State Prison or any other institution."), *adopted by sub nom. Moore v. Casas*, Case No. 1:13-cv-01820-DAD-BAM, 2017 WL 2984353 (E.D. Cal. July 13, 2017); *Mullins v. Wenciker*, No. 1:07-CV-00108 LJO DLB P, 2007 WL 3053320, at *3 (E.D. Cal. Oct. 19, 2007) ("This court has no authority to order that state prison officials transfer prisoners to other facilities."), *adopted by* 2007 WL 4591673 (E.D. Cal. Dec. 28, 2007).  Pitts' request for an order requiring Defendants to transfer him to another facility is DENIED.

**D.  Standing**

In Count I, Pitts makes various allegations based on injuries allegedly suffered by other inmates at OCCC.  *See* ECF No. 1 at PageID # 5–11.  Pitts does not have standing to assert these claims.

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Id*.

Three elements make up the "irreducible constitutional minimum of standing": (1) injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 55, 560-61 (1992);

*Index Newspapers LLC v. U.S. Marshals Serv.*, No. 20-35739, 2020 WL 5988501, at *4 (9th Cir. Oct. 9, 2020).  The party invoking federal jurisdiction bears the burden of establishing these elements.  *Lujan*, 504 U.S. at 561.

Regarding prudential limitations, the Supreme Court "has held that when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."  *Warth*, 422 U.S. at 499.  Moreover, even when the plaintiff has alleged injury sufficient to meet the "case or controversy" requirement, the Supreme Court "has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Id.*; *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1118 (9th Cir. 2015) ("[C]ourts have treated the limitation on third-party standing as a prudential principle that requires plaintiffs to assert their own legal rights.").

In Count I, Pitts makes a variety of allegations against Espinda, Sequiera, Altaris, and Anderson.  *See* ECF No. 1 at PageID # 5.  He claims that they: (1) failed to train adequately staff on how to care for inmates with mental health issues; (2) failed to protect inmates from "harm, abuse, denial of food, [and] denial of water"; (3) failed to "operate, monitor, and administrate" properly staff in the mental health module; (4) failed "stop, curb, and/or eradicate" the "physical abuse, food deprivations and violence" against inmates with mental health issues; (5)

11

intentionally decided not to install more security cameras; (6) failed to establish

policies and procedures "to address and correct the repeated constitutional

violations at OCCC"; (7) allowed existing policies and procedures to remain in

place; and (8) consciously disregarded "the risk to inmates['] safety, well being[,]

and denial of human rights."

Pitts fails, however, to say how he suffered some threatened or actual injury

resulting from the putatively illegal action.  *Warth*, 422 U.S. at 499; *Todd v.

Ackley*, 551 F. App'x 906, 906 (9th Cir. 2014).  For example, Pitts does not allege

that he has mental health issues.  Nor does Pitts allege that he was personally

harmed, abused, or denied water by prison officials.  Pitts fails, therefore, to show

that he has standing to assert any of these claims.  *See Schmier v. U.S. Court of

Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002) ("The party seeking

to invoke the jurisdiction of the federal courts has the burden of alleging specific

facts sufficient to satisfy [standing's] three elements.").

At various points, Pitts alleges that other inmates have suffered injuries.  For

example, he claims that an officer dragged an elderly inmate down steps, medical

assistants stood by as inmates were assaulted, another officer "stomped" on an

inmate's head, officers "beat up" "multiple" inmates, and another inmate was

supposedly beaten up.  ECF No. 1 at PageID # 6–11.  Although Pitts may assert his

own legal rights and interests, he "cannot rest his claim to relief on the legal rights

or interests of third parties." *Warth*, 422 U.S. at 499; *Darring v. Kincheloe*, 783 F.2d 874, 877 –78 (9th Cir. 1986) (concluding state prisoner lacked third-party standing to assert the rights of other inmates). Pitts' claims in Count I are DISMISSED for lack of standing with leave granted to amend.

### E.   First Amendment Claims

#### 1. Retaliation

Pitts alleges in Counts II, and IV that he was targeted for retaliation because of complaints and grievances he had filed. ECF No. 1 at PageID # 12, 13, 16. The First Amendment guarantees a prisoner the right to seek redress of grievances from prison authorities. *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015). "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). A retaliation claim has five basic elements: (1) an assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that prisoner's protected conduct, and that such action; (4) chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *Id.*

Pitts alleges in Count II that two gang members attacked him "in retaliation for his complaints and grievances against [OCCC]," and claims there is "an active hit on his life[.]" *Id.* at PageID # 12–13. Pitts alleges in Count IV that prison

13

officials in the mailroom retaliated against him because of his grievances and complaints by opening his incoming legal mail and delaying or returning his incoming personal mail.  *Id.* at PageID # 16.

Pitts provides insufficient facts, however, to indicate that any Defendant retaliated against him because of his grievances or complaints.  Pitts fails to say when he submitted his various grievances and complaints, what their contents were, who processed them, and what the outcomes were.  *See Latonie v. Mun*, No. 13-00317 HG/RLP, 2013 WL 3327942, at *4 (D. Haw. July 2, 2013).  He fails, therefore, to provide sufficient details or a timeline linking his grievances and complaints to the mistreatment he allegedly experienced at OCCC.  Pitts' retaliation claims in Counts II and IV are DISMISSED with leave granted to amend.

### 2.  Mail

Pitts alleges in Count IV that Silva, Kami, Jesse, and other unidentified defendants opened his legal mail without him being present, interfered with his incoming mail, and delayed his outgoing mail.  ECF No. 1 at PageID # 16–18.

Prisoners have a First Amendment right to send and receive mail while incarcerated.  *Nordstrom*, 856 F.3d at 1271.  A prison may adopt regulations which impinge on an inmate's constitutional rights, however, "if those regulations are 'reasonably related to legitimate penological interests.'"  *Witherow v. Paff*, 52 F.3d

14

264, 265 (9th Cir. 1995) (per curiam) (quoting *Turner v. Safley*, 482 U.S. 78, 89

(1987)).  "Legitimate penological interests include security, order, and

rehabilitation."  *Witherow*, 52 F.3d at 265 (internal quotation marks omitted).

Restrictions on outgoing personal correspondence "must have a closer fit between

the regulation and the purpose it serves than incoming mail restrictions."

*Nordstrom*, 856 F.3d at 1273.

      The First Amendment also protects a prisoner's right to be present when his

properly marked legal mail is opened.  *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204,

1211 (9th Cir. 2017).  Prison officials may require legal mail to be "specially

marked as originating from an attorney, with his name and address being given, if

they are to receive special treatment."  *Wolff v. McDonnell*, 418 U.S. 539, 576

(1974).  "Mail from the courts, as contrasted to mail from a prisoner's lawyer, is

not legal mail."  *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996).

      Pitts alleges in Count IV that properly marked legal mail from an attorney

was opened outside his presence on January 31, 2020, February 1, 2020, and

September 5, 2020.  *Id.* at 17–18.  Pitts also claims that outgoing legal mail he had

given to prison officials on August 12, 2020, was not mailed until August 2, 2020,

and a habeas petition he had provided to prison officials on September 3, 2020,

was not mailed until September 9, 2020.  *Id.* at PageID # 18.  Pitts' claims based

15

on the alleged opening of his legal mail outside his presence and the alleged delay in sending his outgoing mail may proceed.

Regarding Pitts' claim that some of his incoming personal mail was returned as undeliverable or not delivered at all, *id.* at PageID # 17, he fails to state a claim. Pitts fails to say when the various letters were sent and how much time he allowed for their delivery. He does not say whether the letters were properly addressed and had adequate postage. Pitts' claim in Count IV based on the delivery of his incoming personal mail is DISMISSED with leave granted to amend.

### 3. Access to the Courts

For each count in his Complaint, Pitts marks a box indicating that he was denied access to the courts. *See* ECF No. 1 at PageID # 5, 12, 14, 16, 19. "The First Amendment guarantees a prisoner . . . a right of meaningful access to the courts." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015). Claims for the denial of access to the courts may arise from the hindrance of "a litigating opportunity yet to be gained" or from the loss of a suit that cannot now be tried." *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002). As a threshold requirement to an access to the courts claim, a plaintiff must allege an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996). An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348 (internal quotation marks and citation

16

omitted).  Failure to allege an actual injury to a "'non-frivolous legal claim'" is

"fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Lewis,

518 U.S. at 353 & n.4).  Because Pitts fails to allege actual injury, his access to the

courts claims are DISMISSED with leave granted to amend.

## F.  Fourteenth Amendment Claims

### 1.  Adjustment Hearings

Pitts alleges in Counts II and III that he was denied due process during

adjustment hearings on February 10, 2020, and July 9, 2020, respectively.  ECF

No. 1 at PageID # 12–15.

Although prisoners may claim the protections of the Due Process Clause, the

full panoply of rights due a defendant in criminal proceedings does not apply to

prison disciplinary proceedings.  *Wolff*, 418 U.S. at 556.  "[T]here must be mutual

accommodation between institutional needs and objectives and the provisions of

the Constitution that are of general application."  *Id*.  The Supreme Court has

concluded that when a prisoner faces disciplinary charges, prison officials must

provide the prisoner with: (1) written notice of the claimed violation at least

twenty-four hours before the disciplinary hearing; (2) an opportunity to present

documentary evidence and call witnesses "when permitting him to do so will not

be unduly hazardous to institutional safety or correctional goals"; (3) the

opportunity to seek assistance where the charges are complex or the inmate is

17

illiterate; and (4) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action taken. *Id.* at 563–70. Regarding the opportunity to call witnesses, although "[j]ail officials need not provide inmates an unfettered right to call witnesses, . . . they must make the decision whether to allow witnesses on a case-by-case basis, examining the potential hazards that may result from calling a particular person." *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003). The prison officials must also eventually explain why witnesses were not allowed to testify. *Ponte v. Real*, 471 U.S. 491, 497 (1985).

Pitts alleges in Count II that Uedoi and Williamson ignored his request to call two witnesses during a February 10, 2020 disciplinary hearing, and they never "articulated or stated why [Pitts'] witnesses were not called[.]" ECF No. 1 at PageID # 12. Pitts claims in Count III that Fernando, Levi, and Uedoi did not allow him to call two witnesses or to present a written statement in his defense during a July 9, 2020 disciplinary hearing. *Id.* at PageID # 14. Pitts further claims that he was not allowed to review surveillance video footage in connection with either disciplinary hearing. *Id.* at PageID # 12, 14. Pitts' claims against Williamson, Uedoi, Fernando, and Levi in Counts II and III related to his February 10, 2020, and July 9, 2020 disciplinary hearings may proceed.

18

## 2.  Conditions of Confinement

Where a pretrial detainee challenges conditions of confinement, such claims "arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (internal quotation marks omitted). The standard under the Fourteenth Amendment for a pretrial detainee "differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment." *Olivier v. Baca*, 913 F.3d 852, 858 (9th Cir. 2019) (citation omitted).

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979);[7] *see also Block v. Rutherford*, 468 U.S. 576, 583-85 (1984).  "Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense[.]" *Bell*, 441 U.S. at 537.  "Loss of freedom of choice and privacy are inherent

---

[7]  Although *Bell* considered a claim under the Due Process Clause of the Fifth Amendment, the same standards apply under the Due Process Clause of the Fourteenth Amendment.  *See Paul v. Davis*, 424 U.S. 693, 702 n.3 (1976) ("[T]he Fourteenth Amendment imposes no more stringent requirements upon state officials than does the Fifth upon their federal counterparts.").

incidents of confinement," and the fact that detention "interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Id.*

Absent a showing of an expressed intent to punish by prison officials, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. Thus, "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting[.]" *Id.* at 540.

Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," *id.* at 547, "unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security," *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 322-23 (2012). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell*, 441 U.S. at 540 n.23 (internal quotation marks omitted).

A pretrial detainee's conditions of confinement claim is governed by a purely objective standard. *See Gordon*, 888 F.3d at 1124–25.[8]  A pretrial detainee must therefore show that: (1) a particular defendant made an intentional decision with respect to the conditions under which the pretrial detainee was confined; (2) those conditions put him at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in similar circumstances would have appreciated the high degree of risk—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the detainee's injuries. *Id.*

With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that "turns on the facts and circumstances of each particular case." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (internal quotation marks omitted).  "A court must make this determination from the

---

[8]  The Ninth Circuit has not expressly extended the objective deliberate indifference standard to all pretrial detainee conditions of confinement claims, beyond denial of medical care, failure to protect, and excessive force claims, although *Gordon* suggests that it will.  *See Gordon*, 888 F.3d at 1120, 1124 & n.2 (citing *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) (extending objective deliberate indifference standard to all pretrial detainee conditions of confinement claims)); *see also Pitts v. Ige*, No. 18-00470 LEK-RT, 2019 WL 3294799, at *10 (D. Haw. July 22, 2019) (stating that deliberate indifference claims arising under the Fourteenth Amendment "are governed by a wholly objective standard").

perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

### a. Failure to Protect

Pitts alleges in Count II that he "has an active hit on his life." ECF No. 1 at PageID # 13; *see also id.* at PageID # 8 (stating that Pitts is "a target," his "life [is] in danger," and he is a "sitting duck"). The elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc). With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily "turn[ ] on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Pitts fails to indicate how any Defendant made an intentional decision with respect to the conditions at OCCC that put him at substantial risk of suffering

serious harm.  Nor does he allege that any Defendant failed to take reasonable measures to abate any such risk.  Although Pitts claims that he "has been attacked more times than he can list," ECF No. 1 at PageID # 8, he does not explain how any Defendant put him at substantial risk of being attacked.  Nor does he describe how any Defendant responded to the alleged attacks.  Likewise, while Pitts alleges in that there is an "active hit on his life," id. at PageID # 13, he has not shown that any Defendant acted with deliberate indifference to this alleged threat.  Indeed, Pitts acknowledges that he is being housed in the Special Holding Unit ("SHU"), not the general population.  *Id.* at PageID # 20.  This fact undercuts Pitts' claim that any prison official was deliberately indifferent to a threat to his safety.  Pitts' failure to protect claims are DISMISSED with leave granted to amend.

### b.  Denial of Medical Care

Pitts alleges in Count II that he was denied medical care after he was "attacked and assaulted" by his cell mate, ECF No. 1 at PageID # 13, and in Count III that he was denied medical care after he got into a fight with another inmate, id. at PageID # 14.  Alleged violations of the right to adequate medical care brought by pretrial detainees are also evaluated under an objective deliberate indifference standard.  *Gordon*, 888 F.3d at 1124–25.  Under this standard, the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (1) the defendant

made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Id.* at 1125. With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that necessarily turns on the facts and circumstances of each case. *Id.* "The mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (internal quotation marks and citation omitted).

Regarding Pitts' allegations in Count II, he does not claim that a Defendant made an intentional decision that put him at substantial risk of suffering serious harm. *See* ECF No. 1 at PageID # 13. Although Pitts claims that Sergeant Defiesta was the "Sgt. on duty" when he was attacked by two gang members, Defiesta is not named as a defendant. Moreover, Pitts does not explain how Defiesta denied him medical care or why any such denial demonstrates deliberate indifference.

Likewise, to the extent Pitts claims in Count III that he was denied medical care after he got into a fight with another inmate, none of his factual allegations relate to a named Defendant.  *See id.* at PageID # 14.  Moreover, although Pitts claims that he could not sleep without pain in his hand and "was denied medical care for weeks," he does not say with whom he spoke, what he told them, and how they responded.  Moreover, Pitts acknowledges that he was taken to the medical unit, provided with ibuprofen and an ice pack, and it was later discovered that there was a fracture in his hand.  *Id.* at PageID # 14–15.  These facts undercut Pitts' claim that he was denied medical care.  Pitts' denial of medical care claims in Counts II and III are DISMISSED with leave granted to amend.

### c.  Conditions of Confinement in the Special Holding Unit

Pitts makes various allegations regarding the conditions he experienced in the SHU.  *See* ECF No. 1 at PageID # 13, 15.  These claims fail at the starting gate, however, because Pitts fails to link the alleged harm to any Defendant.  *See Latonie*, 2013 WL 3327942, at *3 ("There can be no liability under § 1983 without an affirmative link or connection between an individual defendant's actions and the claimed deprivation.").  Pitts claims based on the conditions in the SHU are DISMISSED with leave granted to amend.

## G. Supervisory Liability

Pitts names Espinda, Sequiera, Altaris, and Silva in Count V, *id.* at PageID #

19.  The Defendants held or hold various supervisory roles within DPS or at

OCCC.

"Vicarious liability is inapplicable to . . . § 1983 suits, [and] a plaintiff must

plead that each Government-official defendant, through [his] own individual

actions, has violated the Constitution," to plead a plausible claim for relief.  *Iqbal*,

556 U.S. at 676; *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (holding

supervisor is liable under 42 U.S.C. § 1983 only on a showing of personal

involvement in the constitutional deprivation or "a sufficient causal connection

between the supervisor's wrongful conduct and the constitutional violation).

"Each Government official, his or her title notwithstanding, is only liable for his or

her own misconduct."  *Iqbal*, 556 U.S. at 677.  That is, supervisory officials

"cannot be held liable unless they themselves" violate a constitutional right.  *Id.* at

683.

Supervisors "can be held liable for: 1) their own culpable action or inaction

in the training, supervision, or control of subordinates; 2) their acquiescence in the

constitutional deprivation of which a complaint is made; or 3) for conduct that

showed a reckless or callous indifference to the rights of others."  *Edgerly v. City*

*& Cty. of S.F.*, 599 F.3d 946, 961-62 (9th Cir. 2010) (citing *Cunningham v. Gates*,

229 F.3d 1271, 1292 (9th Cir. 2000)).  A plaintiff can state a claim by showing that the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), or implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991); *see Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

Although Pitts does not allege that Espinda, Sequiera, Altaris, or Silva participated in or directed the alleged violations of his rights, he does claim that they failed to train adequately and supervise prison officials in the mailroom.  ECF No. 1 at PageID # 19.  He also claims that these Defendants failed to enforce policies and procedures related to the handling of mail and the conduct of adjustment hearings.  *Id.*  These claims may proceed.

## H.  Doe Defendants

The Federal Rules of Civil Procedure do not authorize or prohibit the use of fictitious parties, although Rule 10 requires a plaintiff to include the names of all parties in his complaint.  Fed. R. Civ. P. 10(a).  Doe defendants are disfavored, however, because it is effectively impossible for the United States Marshal to serve an anonymous defendant.

A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular Doe Defendant violated his rights.  A plaintiff may then use the discovery process to obtain the names of Doe Defendants and seek leave to amend to name those defendants, unless it is clear that discovery will not uncover their identities, or that the complaint will be dismissed on other grounds.  *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

Pitts names John and Jane Doe(s) 1 thru 10 in Counts I and V, but makes no specific allegations against any specific Defendant regarding his claims.  He fails, therefore, to link any particular allegation to any specific Doe Defendant and explain how that individual personally violated his civil rights.  This is insufficient to state a claim against any individual Doe Defendant.  Pitts is granted leave to amend Counts I and V to allege specific facts that show how each Doe Defendant individually participated in his claims and violated his rights.  If Pitts successfully does so, and his amended pleading is not otherwise subject to dismissal, he will be allowed to pursue early discovery to discover the identities of the Doe Defendants, and then substitute their names and effect service of his claims as limited herein.

Pitts also names John and Jane Doe(s) 1 thru 10 in Count IV, based on the handling of his mail.  These claims may proceed.  Pitts is ultimately responsible for

28

determining the identity of Doe Defendants and then requesting the Court to issue a Summons and direct service upon them.

## I.  State Law Claims

On the second page of the Complaint, Pitts says that he is asserting negligence and intentional infliction of emotional distress claims under Hawaii law.  *See* ECF No. 1 at PageID # 2.  Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir.1997).

Under Hawaiʻi law, in order to prevail on a negligence claim, a plaintiff is required to prove the following four elements: (1) a duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) a failure on the defendant's part to conform to the standard required—that is, a breach of the duty; (3) a reasonably close causal connection between the conduct and the resulting injury;

and (4) actual loss or damage resulting to the interests of another. *Molfino v. Yuen*, 134 Hawai'i 181, 184, 339 P.3d 679, 682 (2014).

The tort of intentional infliction of emotional distress consists of the following four elements: (1) that the act allegedly causing the harm was intentional or reckless; (2) that the act was outrageous; (3) that the act caused; (4) extreme emotional distress to another. *Young v. Allstate Ins. Co.*, 119 Hawai'i 403, 429, 198 P.3d 666, 692 (2008).

Because Pitts fails to say which Defendant allegedly violated his rights under Hawai'i law, and how they did so, these claims are DISMISSED with leave granted to amend.

## IV.  LEAVE TO AMEND

The Complaint is DISMISSED IN PART with partial leave granted to amend consistent with the directions in this Order on or before December 7, 2020. Pitts may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the original Complaint.  Claims that do not properly relate to his original pleading are subject to dismissal.

If he elects to file an amended pleading, Pitts must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.4, which require an amended complaint to be complete itself,

without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights complaint form.  An amended complaint will supersede the preceding complaint.  *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR10.4.  Claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

Pitts is reminded that each count should involve only one issue.  As stated on the court's prisoner civil rights complaint form, if a claim involves more than one issue, each issue should be stated in a different count.  Moreover, the supporting facts provided in support of each count should describe exactly what each Defendant did or did not do to violate Pitts' rights.

**IN THE ALTERNATIVE:**

In writing on or before December 7, 2020, Pitts may elect to stand on his First Amendment claims in Counts IV and V against Silva, Kami, Jesse, Espinda, Altaris, Sequiera, and Doe Defendants based on the handling of his incoming legal mail and outgoing mail, and his Fourteenth Amendment claims in Counts II and III against Williamson, Uedoi, Fernando, and Levi based on his adjustment hearings.  On receipt of written notification, or if Pitts fails to timely submit an amended

complaint, the Court will order the Complaint, as limited by this Order served without further notice.

## V. <u>CONCLUSION</u>

(1) Pitts' claims in Counts IV and V against Silva, Kami, Jesse, Espinda, Altaris, Sequiera, and Doe Defendants based on the handling of his incoming legal mail and outgoing mail may proceed.

(2) Pitts' Fourteenth Amendment claims in Counts II and III against Williamson, Uedoi, Fernando, and Levi based on his adjustment hearings may proceed.

(3) Pitts' claims for damages against official capacity Defendants are DISMISSED with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1).

(4) Pitts' request for a transfer to another facility is DENIED.

(5) Pitts' remaining retaliation, access to the courts, threat to safety, denial of medical care, conditions of confinement, and state law claims are DISMISSED with leave granted to amend.  Pitts may file an amended pleading that cures the noted deficiencies in these claims, if possible, on or before December 7, 2020.

(6) IN THE ALTERNATIVE, Pitts may notify the court in writing on or before December 7, 2020, that he elects to proceed with his First Amendment claims in Counts IV and V against Silva, Kami, Jesse, Espinda, Altaris, Sequiera, and Doe Defendants based on the handling of his incoming legal mail and outgoing

32

mail, and his Fourteenth Amendment claims in Counts II and III against Williamson, Uedoi, Fernando, and Levi based on his adjustment hearings.

If Pitts fails to file either an amended pleading or a notice of election, the Court will direct the Complaint be served as limited by this Order.

(7)  The Clerk is DIRECTED to send Pitts a prisoner civil rights complaint form so that he may comply with the directions of this Order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, November 6, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JOSEPH PITTS VS. NOLAN ESPINDA, ET AL; CV 20-00431 LEK-KJM; ORDER DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE TO AMEND**