IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOSEPH PITTS, #A0259019,<br><br>Plaintiff,<br><br>v.<br><br>NOLAN ESPINDA, *et al.*,<br><br>Defendants. | CIV. NO. 20-00431 LEK-KJM<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING EARLY DISCOVERY |

**ORDER DISMISSING FIRST AMENDED COMPLAINT
IN PART AND DIRECTING EARLY DISCOVERY**

Before the Court is pro se Plaintiff Joseph Pitts's ("Pitts") First Amended

Prisoner Civil Rights Complaint ("FAC") asserting claims under 42 U.S.C. § 1983

and state law.[1]  ECF No. 13.  Also before the Court is Pitts's January 4, 2021

"Supplemental Pleading."[2]  ECF No. 14.  Pitts alleges that Defendants, officials of

the Department of Public Safety ("DPS") and the Oahu Community Correctional

---

[1]  Section 28 U.S.C. § 1343(a)(3) grants this Court jurisdiction to consider Pitts's claims under 42 U.S.C. § 1983, and 28 U.S.C. § 1367 grants the Court supplemental jurisdiction over all other claims that are "so related to claims in the action . . . that they form part of the same case or controversy[.]"  Although Pitts cites "28 U.S.C. 1997(d)" as an additional basis of jurisdiction, there is no such section.  To the extent Pitts also cites 42 U.S.C. § 1981 (prohibiting racial discrimination by private actors), and 42 U.S.C. § 1985 (relating to a conspiracy to interfere with civil rights), those provisions are irrelevant based on Pitts's factual allegations.

[2]  On January 5, 2021, the Court granted Pitts's Motion to Permit Plaintiff to Submit Supplemental Pleading.  ECF No. 15.  The Court explained that it would consider the factual allegations in the Supplemental Pleading along with those in the FAC.  *Id.*

Center ("OCCC"),[3] violated the law during his current pretrial confinement at the OCCC. For the following reasons, the FAC is DISMISSED in part with partial leave granted to amend. The Court also DIRECTS early discovery for Pitts to identify the Doe Defendants in Count IV.

## I. STATUTORY SCREENING

The Court is required to screen all in forma pauperis prisoner pleadings against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).

---

[3] Pitts names in their individual and official capacities Nolan Espinda, Francis Sequiera, Caesar Altaris, Lei Silva, Calvert Williamson, Ahn Uedoi, Urita Levi, Jessica Ashley Fernando, Sergeant Anderson, Psychologist Hashimoto, Psychologist Micah, "John and Jane Doe(s) 1 Through ten," "Mailroom Staff Jane Doe(s) 1 Through 10," Mail Clerk Kami, Mail Clerk Jesse, Officer Defiesta, Amy Jodar, Gavin Takenaka, Lana Heick, "RN Tiare," Caroline Mee, Tina Agaran, and Neil Hayase. ECF No. 13 at PageID ## 83–84. Although the Court granted Pitts's motion to add Dr. Gavin Takenaka and Amy Jodar as defendants, *see* ECF Nos. 5, 6, other than stating that one of his letters was forwarded to them, Pitts does not say how either of them allegedly violated the law. Any claims against Takenaka and Jodar are DISMISSED with leave granted to amend. Likewise, while Pitts claims that he told Hashimoto and Micah, two psychologists, about various conditions at the OCCC, he does not claim that they personally violated his constitutional rights. *See* ECF No. 13 at PageID ## 89–91. Any claims against them are also DISMISSED with leave granted to amend.

*See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

Rule 12 is read in conjunction with Rule 8(a)(2) when screening a complaint; Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citation omitted).  The "mere possibility of misconduct," or an "unadorned, the defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard.  *Id.* at 678–79 (citations omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff

can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a

claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See*

*Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. **BACKGROUND**[4]

Pitts is a pretrial detainee at the OCCC.  On October 7, 2020, the Court

received his original Complaint.  ECF No. 1.  On November 6, 2020, the Court

issued an Order Dismissing Complaint in Part with Partial Leave to Amend.  ECF

No. 6.  The Court received Pitts's FAC on December 23, 2020, ECF No. 23, and

his Supplemental Pleading on January 1, 2021, ECF No. 14.

In Count I, Pitts alleges a range of violations by Espinda, Sequiera, Altaris,

Anderson, and ten unnamed defendants.  *See* ECF No. 13 at PageID ## 87–94.

Pitts generally claims that these Defendants:  (1) failed to adequately train staff on

how to care for inmates with mental health issues; (2) failed to protect inmates

from "harm, abuse, denial of food, [and] denial of water"; (3) failed to "operate,

monitor, and administrate" properly staff in the mental health module; (4) failed to

"stop, curb, and/or eradicate" the "physical abuse, food deprivations and violence"

against inmates with mental health issues; (5) intentionally decided not to install

more security cameras at the OCCC; (6) failed to establish policies and procedures

---

[4]  Pitts's factual allegations are accepted as true.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

"to address and correct the repeated constitutional violations at OCCC"; (7) allowed existing policies and procedures to remain in place; and (8) consciously disregarded "the risk to inmates['] safety, well being[,] and denial of human rights." *Id.* at 87.

In Count II, Pitts alleges that Williamson, Uedoi, Defiesta, and Heick violated his rights in connection with a February 10, 2020 adjustment hearing. *Id.* at PageID ## 95–96. During the hearing, Pitts was charged with and found guilty of fighting with another person. *Id.* According to Pitts, two gang members had attacked him "in retaliation for his complaints and grievances against [OCCC]." *Id.* Pitts claims that he acted in self-defense. *Id.* Pitts asserts that he "is a target" and he "has an active hit on his life[.]" *Id.* at PageID # 96. According to Pitts, he asked to call two witnesses who would have corroborated his version of events, but they were not called during the hearing. *Id.* Pitts also claims that he requested surveillance camera footage, but he was not allowed to see it and it was not presented during the hearing. *Id.*

In Count III, Pitts alleges that Fernando, Levi, and Uedoi violated his rights during a July 9, 2020 adjustment hearing. *Id.* at PageID ## 97–99. During this hearing, Pitts was charged with and found guilty of assaulting a person without a weapon or dangerous instrument. *Id.* at PageID # 97. Pitts claims that he was fighting with another inmate in the OCCC's kitchen when Officer Lamie (who is

5

not named as a defendant) ordered the inmates to move into a cell, where the inmates were locked inside.  *Id*.  Pitts asked to call two witnesses, but they were not called during the hearing.  *Id*.  Pitts also claims that he requested surveillance camera footage that would have shown where the fight began, where it ended, and the location of correctional officers at the time, but the video was not reviewed during his hearing.  *Id*.  Pitts further claims that he was not allowed to provide a written statement in his defense.  *Id*.

In Count IV, Pitts alleges that Silva, Kami, Jesse, and other unidentified defendants opened his properly marked legal mail outside his presence, delayed his outgoing mail, and delayed or returned his incoming personal mail.  *Id*. at PageID ## 100–02.  Pitts claims that prison officials opened properly marked legal mail outside his presence on January 31, 2020, February 1, 2020, and September 5, 2020.[5]  *Id*. at PageID ## 101–02.  Pitts also claims that outgoing legal mail he had given to prison officials on August 12, 2020, was not mailed until August 25, 2020, and a habeas petition he had provided to prison officials on September 3, 2020, was not mailed until September 9, 2020.  *Id*. at PageID # 102.  Pitts further claims that some of his incoming personal mail was returned as undeliverable.  *Id*. at PageID # 101.

---

[5]  Although Pitts also alleges that prison officials opened mail from an attorney on February 7, 2020, he does not claim that this mail was properly marked as legal mail.  *See* ECF No. 1 at PageID # 100.

In Count V, Pitts alleges that Espinda, Altaris, Sequiera, Silva, and other unidentified defendants:  (1) failed to train adequately and supervise mailroom staff; (2) failed to protect him from retaliation and reprisal; (3) failed to protect his constitutional rights; (4) failed to enforce mailroom policies and procedures; (5) failed to address and correct "repeated violations of mail procedures and adjustment hearing procedures"; and (6) consciously disregarded risks to his rights. *Id*. at PageID # 103.

In Count VI, Pitts alleges that Espinda, Mee, Agaran, Hayase, and other unidentified defendants:  (1) failed to adequately train and supervise Tiare; (2) failed to protect him from retaliation and reprisal; (3) failed to protect his right to medical care; (4) failed to manage, supervise, and monitor healthcare services at the OCCC; (5) failed to enforce healthcare standards, procedures, and policies; and (6) disregarded risks to his health and safety.  *Id.* at PageID # 104.

Pitts asks for: (1) an order requiring prison officials to make "necessary changes to ensure prisoners are no longer starved, assaulted or abused"; (2) "just and fair compensation" for the mistreatment he allegedly experienced; (3) an order stopping mailroom staff from "obstructing his mail and communications"; (4) surveillance cameras installed throughout the OCCC; and (5) $15,000 for pain and suffering.  *Id.* at PageID # 105.

# III.  DISCUSSION

## A.  Legal Framework for Claims under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Belgau v. Inslee*, 975 F.3d 940, 946 (9th Cir. 2020).  Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167 (9th Cir. 1980).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).  Thus, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and must affirmatively link that injury to the violation of his rights.

## B.  Eleventh Amendment

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."

*Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-03 (1984).  It does not bar official-capacity suits for prospective relief to enjoin alleged ongoing violations of federal law.  *See Wolfson v. Brammer*, 616 F.3d 1045, 1065-66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).  Nor does the Eleventh Amendment bar suits for damages against state officials in their personal capacities.  *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Pitts names all Defendants in both their official and individual capacities. *See* ECF No. 13 at PageID # 83.  To the extent Pitts seeks monetary damages from Defendants in their official capacities, *see id.* at PageID # 105, those claims are barred by the Eleventh Amendment and DISMISSED with prejudice.  Pitts's request for monetary damages from Defendants in their individual capacities and prospective, injunctive relief from Defendants in their official capacities, *see id.*, are not barred by the Eleventh Amendment.

## C.  Standing

In Count I, Pitts makes various allegations based on injuries allegedly suffered by other inmates at the OCCC.  *See* ECF No. 13 at PageID ## 88–94. Pitts does not have standing to assert these claims.

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Id.*

Three elements make up the "irreducible constitutional minimum of standing": (1) injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 55, 560-61 (1992); *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 825 (9th Cir. 2020). The party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan*, 504 U.S. at 561.

Regarding prudential limitations, the Supreme Court "has held that when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth*, 422 U.S. at 499. Moreover, even when the plaintiff has alleged injury sufficient to meet the "case or controversy" requirement, the Supreme Court "has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.*; *Ray Charles Found. v. Robinson*, 795 F.3d 1109,

1118 (9th Cir. 2015) ("[C]ourts have treated the limitation on third-party standing as a prudential principle that requires plaintiffs to assert their own legal rights.").

In Count I, Pitts makes a variety of allegations based on the experiences of other inmates at the OCCC.  He claims, among other things, that prison officials assaulted other inmates, ECF No. 13 at PageID # 88, and denied them food and medical care, *id.* at PageID # 89.  Although Pitts may assert his own legal rights and interests, he "cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth*, 422 U.S. at 499; *Darring v. Kincheloe*, 783 F.2d 874, 877 – 78 (9th Cir. 1986) (concluding state prisoner lacked third-party standing to assert the rights of other inmates).

To the extent Pitts seeks to represent other inmates, he may not do so.  *See Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ("A litigant appearing in propria persona has no authority to represent anyone other than himself."); *see also Agrio v. Gomez*, 17 F.3d 393, 393 (9th Cir. 1994) (unpublished) (same); *Jorss v. Schwarzenegger*, 168 F. App'x 825, 826 (9th Cir. 2006) ("The district court properly dismissed the complaint because a plaintiff acting pro se cannot represent others.").

Pitts's claims in Count I based on the alleged experiences of other inmates at the OCCC are DISMISSED with prejudice.

**D.  First Amendment Claims**

**1.  Retaliation**

Pitts alleges in Counts I, II, and IV that he was targeted for retaliation because of complaints and grievances he had filed.  ECF No. 13 at PageID ## 91, 95–96, 100.

The First Amendment guarantees a prisoner the right to seek redress of grievances from prison authorities.  *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015).  "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'"  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  A retaliation claim has five basic elements: (1) an assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that prisoner's protected conduct, and that such action; (4) chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal.  *Id.*

Pitts alleges in Count I that he faced "danger to his life on many occasions" and "has been a target."  ECF No. 13 at PageID # 91.  He alleges in Count II that two gang members attacked him "in retaliation for his complaints and grievances against [OCCC]," and claims there is "an active hit on his life[.]"  *Id.* at PageID ## 95–96.  Pitts also claims in Count II that Heick retaliated against him by moving a gang member into his cell.  *Id.* at PageID # 96.  Pitts alleges in Count IV that

prison officials in the mailroom retaliated against him because of his grievances and complaints by opening his incoming legal mail and delaying or returning his incoming personal mail. *Id.* at PageID # 100.

Pitts provides insufficient facts, however, to indicate that any Defendant retaliated against him because of his grievances or complaints. Pitts fails to say when he submitted his various grievances and complaints, what their contents were, who processed them, and what the outcomes were. *See Latonie v. Mun*, No. 13-00317 HG/RLP, 2013 WL 3327942, at *4 (D. Haw. July 2, 2013). He fails, therefore, to provide sufficient details or a timeline linking his grievances and complaints to the mistreatment he allegedly experienced at the OCCC. Pitts's retaliation claims in Counts I, II, and IV are DISMISSED with leave granted to amend.

### 2. Mail

Pitts alleges in Count IV that Silva, Kami, Jesse, and other unidentified defendants opened his legal mail without him being present, interfered with his incoming mail, and delayed his outgoing mail. ECF No. 13 at PageID ## 100–02.

Prisoners have a First Amendment right to send and receive mail while incarcerated. *Nordstrom*, 856 F.3d at 1271. A prison may adopt regulations which impinge on an inmate's constitutional rights, however, "if those regulations are 'reasonably related to legitimate penological interests.'" *Witherow v. Paff*, 52 F.3d

13

264, 265 (9th Cir. 1995) (per curiam) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  "Legitimate penological interests include security, order, and rehabilitation." *Witherow*, 52 F.3d at 265 (internal quotation marks omitted). Restrictions on outgoing personal correspondence "must have a closer fit between the regulation and the purpose it serves than incoming mail restrictions." *Nordstrom*, 856 F.3d at 1273.

The First Amendment also protects a prisoner's right to be present when his properly marked legal mail is opened. *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017).  Prison officials may require legal mail to be "specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment." *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).  "Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996).

Pitts alleges in Count IV that prison officials opened properly marked legal mail from an attorney outside his presence on January 31, 2020, February 1, 2020, and September 5, 2020.  ECF No. 13 at PageID ## 101–02.  Pitts also claims that outgoing legal mail he had given to prison officials on August 12, 2020, was not mailed until August 25, 2020, and a habeas petition he had provided to prison officials on September 3, 2020, was not mailed until September 9, 2020.  *Id.* at PageID # 102.  Pitts alleges in his Supplemental Pleading that Silva continues to

interfere with his mail.  ECF No. 14 at PageID # 109.  Pitts's claims based on the alleged opening of his legal mail outside his presence and the alleged delay in sending his outgoing mail may proceed.

Regarding Pitts's claim that some of his incoming personal mail was returned as undeliverable or not delivered at all, *id.* at PageID # 101, he fails to state a claim.  Pitts fails to say when the various letters were sent and how much time he allowed for their delivery.  He does not say whether the letters were properly addressed and had adequate postage.  Pitts's claim in Count IV based on the delivery of his incoming personal mail is DISMISSED with leave granted to amend.

### 3.  Access to the Courts

For Counts I through V, Pitts marks a box indicating that he was denied access to the courts.  *See* ECF No. 13 at PageID ## 87, 95, 97, 100, 103.  "The First Amendment guarantees a prisoner . . . a right of meaningful access to the courts."  *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015).  Claims for the denial of access to the courts may arise from the hindrance of "a litigating opportunity yet to be gained" or from the loss of a suit that cannot now be tried."  *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002).  As a threshold requirement to an access to the courts claim, a plaintiff must allege an "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996).  An "actual injury" is "actual prejudice with

respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348 (internal quotation marks and citation omitted). Failure to allege an actual injury to a "'non-frivolous legal claim'" is "fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting *Lewis*, 518 U.S. at 353 & n.4). Pitts does not allege that he was unable to meet a filing deadline or present a claim. Because Pitts fails to allege actual injury, his access to the courts claims are DISMISSED with leave granted to amend.

## E. Fourteenth Amendment Claims

### 1. Adjustment Hearings

Pitts alleges in Counts II and III that he was denied due process during adjustment hearings on February 10, 2020, and July 9, 2020, respectively. ECF No. 13 at PageID ## 95–99.

Although prisoners may claim the protections of the Due Process Clause, the full panoply of rights due a defendant in criminal proceedings does not apply to prison disciplinary proceedings. *Wolff*, 418 U.S. at 556. "[T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* The Supreme Court has concluded that when a prisoner faces disciplinary charges, prison officials must provide the prisoner with: (1) written notice of the claimed violation at least twenty-four hours before the disciplinary hearing; (2) an opportunity to present

documentary evidence and call witnesses "when permitting him to do so will not

be unduly hazardous to institutional safety or correctional goals"; (3) the

opportunity to seek assistance where the charges are complex or the inmate is

illiterate; and (4) a written statement by the factfinders as to the evidence relied on

and reasons for the disciplinary action taken. *Id.* at 563–70.

Regarding the opportunity to call witnesses, although "[j]ail officials need

not provide inmates an unfettered right to call witnesses, . . . they must make the

decision whether to allow witnesses on a case-by-case basis, examining the

potential hazards that may result from calling a particular person." *Serrano v.*

*Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003). The prison officials must also

eventually explain why witnesses were not allowed to testify. *Ponte v. Real*, 471

U.S. 491, 497 (1985).

Pitts alleges in Count II that Uedoi and Williamson ignored his request to

call two witnesses during a February 10, 2020 disciplinary hearing, and they never

"articulated or stated why [Pitts's] witnesses were not called[.]" ECF No. 13 at

PageID # 95. Pitts alleges in Count III that Fernando, Levi, and Uedoi did not

allow him to call two witnesses or to present a written statement in his defense

during a July 9, 2020 disciplinary hearing. *Id.* at PageID # 97. Pitts further claims

that he was not allowed to review surveillance video footage in connection with

either disciplinary hearing. *Id.* at PageID ## 95, 97. Pitts's claims against

Williamson, Uedoi, Fernando, and Levi in Counts II and III related to his February 10, 2020, and July 9, 2020 disciplinary hearings may proceed.

### 2. Conditions of Confinement

Where a pretrial detainee challenges conditions of confinement, such claims "arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (internal quotation marks omitted). The standard under the Fourteenth Amendment for a pretrial detainee "differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment." *Olivier v. Baca*, 913 F.3d 852, 858 (9th Cir. 2019) (citation omitted).

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979);[6] *see also Block v. Rutherford*, 468 U.S. 576, 583-85 (1984). "Not every disability imposed

---

[6] Although *Bell* considered a claim under the Due Process Clause of the Fifth Amendment, the same standards apply under the Due Process Clause of the Fourteenth Amendment. *See Paul v. Davis*, 424 U.S. 693, 702 n.3 (1976) ("[T]he Fourteenth Amendment imposes no more stringent requirements upon state officials than does the Fifth upon their federal counterparts.").

during pretrial detention amounts to 'punishment' in the constitutional sense[.]" *Bell*, 441 U.S. at 537. "Loss of freedom of choice and privacy are inherent incidents of confinement," and the fact that detention "interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Id.*

Absent a showing of an expressed intent to punish by prison officials, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. Thus, "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting[.]" *Id.* at 540.

Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," *id.* at 547, "unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security," *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 322-23 (2012). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to

19

their expert judgment in such matters." *Bell*, 441 U.S. at 540 n.23 (internal quotation marks omitted).

A pretrial detainee's conditions of confinement claim is governed by a purely objective standard. *See Gordon*, 888 F.3d at 1124–25.[7] A pretrial detainee must therefore show that: (1) a particular defendant made an intentional decision with respect to the conditions under which the pretrial detainee was confined; (2) those conditions put him at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in similar circumstances would have appreciated the high degree of risk—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the detainee's injuries. *Id.*

With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that "turns on the facts and circumstances of each particular case." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (internal

---

[7] The Ninth Circuit has not expressly extended the objective deliberate indifference standard to all pretrial detainee conditions of confinement claims, beyond denial of medical care, failure to protect, and excessive force claims, although *Gordon* suggests that it will. *See Gordon*, 888 F.3d at 1120, 1124 & n.2 (citing *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) (extending objective deliberate indifference standard to all pretrial detainee conditions of confinement claims)); *see also Pitts v. Ige*, No. 18-00470 LEK-RT, 2019 WL 3294799, at *10 (D. Haw. July 22, 2019) (stating that deliberate indifference claims arising under the Fourteenth Amendment "are governed by a wholly objective standard").

quotation marks omitted).  "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  *Id.*

### a. **Failure to Protect**

Pitts alleges in Count I that he is "a target," his life is in "danger," and he is "a sitting duck."  ECF No. 13 at PageID # 91.  Pitts also alleges in Count II that he "has an active hit on his life."  ECF No. 13 at PageID # 96.

The elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries.  *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc).

Pitts fails to allege how any Defendant's conduct put him at substantial risk of suffering serious harm.  Although Pitts claims that Heick moved a gang member into his cell, he does not allege that Heick had any reason to suspect that the gang

21

member might harm him.  *See* ECF No. 13 at PageID # 96.  Nor does he allege that

any Defendant failed to take reasonable measures to abate a substantial risk of

serious harm.  Although Pitts claims that he "has been attacked more times than he

can count," ECF No. 13 at PageID # 91, he does not describe how any Defendant

responded to these alleged attacks.  *See id.* at PageID # 96.  Indeed, Pitts

acknowledges that he was moved to the Special Holding Unit ("SHU"), where he

continues to be housed.  *Id.* at PageID # 96.  This fact undercuts Pitts's claim that

any prison official was deliberately indifferent to a threat to his safety.  Pitts's

failure to protect claims are DISMISSED with leave granted to amend.

### b.  Denial of Medical Care

Pitts alleges in Count II that he was denied medical care after he was

"attacked and assaulted" by his cellmate.  ECF No. 13 at PageID # 96.  Pitts

alleges in Count III that he was denied medical care after he got into a fight with

another inmate.  *Id.* at PageID ## 97–99.

Alleged violations of the right to adequate medical care brought by pretrial

detainees are also evaluated under an objective deliberate indifference standard.

*Gordon*, 888 F.3d at 1124–25.  Under this standard, the elements of a pretrial

detainee's medical care claim against an individual defendant under the due

process clause of the Fourteenth Amendment are:  (1) the defendant made an

intentional decision with respect to the conditions under which the plaintiff was

22

confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries.  *Id.* at 1125.

Regarding Pitts's allegations in Count II, he has not shown that Defiesta's actions put him at substantial risk of suffering serious harm.  *See* ECF No. 13 at PageID # 96.  Although Pitts claims that his cellmate "almost stabbed" him, Pitts does not describe the nature of his actual injuries.  He states only that he was denied treatment for "his hand and body."  *Id.* at PageID # 96.  Without more, Pitts has not shown that he faced a substantial risk of serious harm.  Given the uncertainty regarding the nature of Pitts's alleged injuries, he also has not shown that Defiesta's conduct was objectively unreasonable.  *See Gordon*, 888 F.3d at 1125 (noting that the mere lack of care by a state official does not violate the Fourteenth Amendment).

Likewise, to the extent Pitts claims in Count III that he was denied medical care after he got into a fight with another inmate, he has not shown that he faced a substantial risk of suffering serious harm.  Pitts alleges only that his hand was and that he could not make a fist.  ECF No. 13 at PageID # 98.  Pitts also fails to allege

that any prison official's conduct was objectively unreasonable. Pitts acknowledges that he was taken to the medical unit, seen by numerous nurses, and provided with an ice pack by one nurse. ECF No. 13 at PageID # 98. He also acknowledges that x-rays were eventually taken. *Id.* Although Pitts contends that pictures and x-rays of his injured hand should have been taken sooner, he does not specify how long he had to wait for the images to be taken or what difference having them sooner might have made. Pitts's denial of medical care claims in Counts II and III are DISMISSED with leave granted to amend.

### c. Other Conditions at the OCCC

Pitts makes various allegations regarding other conditions at the OCCC. *See* ECF No. 13 at PageID # 89.

In Count I, Pitts alleges that he asked for water "on a number of occasions," and prison officials told him "multiple times" that he needed to wait for it. ECF No. 13 at PageID # 89. Pitts does not say, however, when these alleged events took place, who he spoke with, or how long he had to wait for water. Although Pitts claims that he was on medication that required him to drink a lot of water, he has not plausibly alleged that the temporary denial of drinking water exposed him to a substantial risk of serious harm.

Pitts also claims that "one night" Anderson took away his hot dinner. *Id.* at PageID # 89. Pitts does not say when this allegedly occurred, nor does he allege

24

that Anderson entirely denied him food.  Pitts fails to state a claim based on the

alleged denial of one hot meal.  *See Garnica v. Wash. Dep't of Corr.*, 965 F. Supp.

2d 1250, 1267 (W.D. Wash. 2013) (noting that prisoner "has no constitutional right

to be served a hot meal), *aff'd*, 639 F. App'x 484 (9th Cir. 2016).

Pitts further claims that five inmates sometimes lived in a cell the "size of a

closet," in the nude, with no blankets.  ECF No. 13 at PageID # 90.  Pitts does not

claim, however, that he personally experienced these conditions or who allegedly

forced him to do so.

Finally, Pitts alleges that some of the cells he lived in did not have sinks.

ECF No. 13 at PageID # 91.  Because of this, Pitts claims that he could not wash

his hands before eating.  *Id.*  Pitts does not allege, however, that prison officials

deprived him of all means of sanitizing his hands before meals.  Nor does he allege

that he was not provided with utensils to eat his meals.  Moreover, Pitts fails to link

the alleged harm to any Defendant.  *See Latonie*, 2013 WL 3327942, at *3 ("There

can be no liability under § 1983 without an affirmative link or connection between

an individual defendant's actions and the claimed deprivation.").

Pitts's claims based on other conditions at the OCCC are DISMISSED with

leave granted to amend.

## F.  Supervisory Liability

Pitts names various DPS and OCCC supervisory officials, including

Espinda, Sequiera, and Altaris in Count I, ECF No. 13 at PageID # 87, Silva in

Count IV, *id.* at PageID # 100, Espinda, Sequiera, Altaris, and Silva in Count V, *id.*

at PageID # 103, and Espinda, Mee, Agaran, and Hayase in Count VI, *id.* at

PageID # 104.

"Vicarious liability is inapplicable to . . . § 1983 suits, [and] a plaintiff must

plead that each Government-official defendant, through [his] own individual

actions, has violated the Constitution," to plead a plausible claim for relief.  *Iqbal*,

556 U.S. at 676; *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (holding

supervisor is liable under 42 U.S.C. § 1983 only on a showing of personal

involvement in the constitutional deprivation or "a sufficient causal connection

between the supervisor's wrongful conduct and the constitutional violation).

"Each Government official, his or her title notwithstanding, is only liable for his or

her own misconduct."  *Iqbal*, 556 U.S. at 677.  That is, supervisory officials

"cannot be held liable unless they themselves" violate a constitutional right.  *Id.* at

683.

Supervisors "can be held liable for: 1) their own culpable action or inaction

in the training, supervision, or control of subordinates; 2) their acquiescence in the

constitutional deprivation of which a complaint is made; or 3) for conduct that

showed a reckless or callous indifference to the rights of others." *Edgerly v. City & Cty. of S.F.*, 599 F.3d 946, 961-62 (9th Cir. 2010) (citing *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)).  A plaintiff can state a claim by showing that the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), or implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991); *see Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

In dismissing in part the original Complaint, the Court stated that Pitts's claims against Espinda, Sequiera, Altaris, and Silva based on the handling of his mail and the conduct of his adjustment proceedings could proceed.  ECF No. 8 at PageID ## 66–67.  After reviewing the FAC, however, it is evident that Pitts states a colorable claim for relief against only Silva, the mailroom supervisor, based on the handling of his mail.  Pitts's claims against Silva in Counts IV and V may therefore proceed.

Pitts's claims against Espinda, Sequiera, Altaris, Mee, Agaran, and Hayase in Counts I, V, and VI are based on conclusory allegations that they failed to train and supervise prison officials, and enforce policies and procedures.  *See* ECF No. 13 at PageID ## 87, 103–04.  The Court is not bound, however, to accept as true a

legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. Pitts does not allege that any of these supervisory officials were directly involved in the allegedly unconstitutional conduct. Nor does he plausibly allege that any of these supervisory officials were aware of the allegedly unconstitutional conduct against him and acquiesced to it. Pitts's conclusory allegations do not state a plausible claim for relief against Espinda, Sequiera, Altaris, Mee, Agaran, and Hayase. *See Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (noting that conclusory allegations do not suffice to state a claim for supervisory liability). Pitts's claims against Espinda, Sequiera, Altaris, Mee, Agaran, and Hayase in Counts I, V, and VI are DISMISSED with leave granted to amend.

### G. Doe Defendants

The Federal Rules of Civil Procedure do not authorize or prohibit the use of fictitious parties, although Rule 10 requires a plaintiff to include the names of all parties in his complaint. Fed. R. Civ. P. 10(a). Doe defendants are disfavored, however, because it is effectively impossible for the United States Marshal to serve an anonymous defendant.

A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular Doe Defendant violated his rights. A plaintiff may then use the discovery process to obtain the names of Doe Defendants and seek leave to amend

to name those defendants, unless it is clear that discovery will not uncover their identities, or that the complaint will be dismissed on other grounds.  *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

Pitts names Doe Defendants in Counts I, V, and VI, but makes no specific allegations against any specific Defendant regarding his claims.  He fails, therefore, to link any particular allegation to any specific Doe Defendant and explain how that individual personally violated his civil rights.  This is insufficient to state a claim against any individual Doe Defendant.  Pitts's claims against Doe Defendants in Counts I, V, and VI are DISMISSED with prejudice.

Pitts also names John and Jane Doe(s) 1 through 10 in Count IV, based on the handling of his mail.  Pitts has provided sufficient information to allow him to conduct limited, early discovery to identify these unidentified mailroom workers.  Once Pitts identifies these unknown mailroom employees, if he chooses to file another amended pleading, he must say how each Defendant allegedly violated his constitutional rights.  Accordingly, Pitts is GRANTED leave to conduct early discovery to determine the names of the Doe Defendants associated with Count IV.

## H.  State Law Claims

On the second page of the FAC, Pitts says that he is asserting negligence and intentional infliction of emotional distress ("IIED") claims under Hawaii law.  *See*

ECF No. 13 at PageID # 84.  Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir.1997).

Pitts claims in Count III that Tiare is liable for negligence and IIED based on the medical care she provided him.  ECF No. 13 at PageID # 99.  For the reasons set forth *supra*, however, Pitts fails to state a plausible denial of medical care claim.  Because Pitts fails to state a claim based on the medical care he received at the OCCC, the Court declines to exercise supplemental jurisdiction over any state-law claims based on that care.  *See Gustafson v. Fukino*, No. 09-00565 SOM/KSC, 2010 WL 2507556, at *9 (D. Haw. June 18, 2010) ("When, as here, the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (internal quotation marks omitted)).  Pitts's state-law claims are DISMISSED without prejudice.

## IV.  <u>LEAVE TO AMEND</u>

The FAC is DISMISSED IN PART with partial leave granted to amend consistent with the directions in this Order on or before March 8, 2021.  Pitts may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the FAC. Claims that do not properly relate to his original pleading are subject to dismissal.

If he elects to file an amended pleading, Pitts must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.4, which require an amended complaint to be complete itself, without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights complaint form.  An amended complaint will supersede the preceding complaint.  *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR10.4.  Claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

Pitts is again reminded that each count should involve only one issue.  As stated on the court's prisoner civil rights complaint form, if a claim involves more than one issue, each issue should be stated in a different count.  Moreover, the

supporting facts provided in support of each count should describe exactly what each Defendant did or did not do to violate Pitts's rights.

**IN THE ALTERNATIVE:**

In writing on or before March 8, 2021, Pitts may elect to stand on his First Amendment claims in Counts IV and V against Silva, Kami, and Jesse based on the handling of his incoming legal mail and outgoing mail, and his Fourteenth Amendment claims in Counts II and III against Williamson, Uedoi, Fernando, and Levi based on his adjustment hearings. On receipt of written notification, or if Pitts fails to timely submit an amended pleading, the Court will order the FAC, as limited by this Order served without further notice.

## V. <u>CONCLUSION</u>

(1) Pitts's claims in Counts IV and V against Silva, Kami, Jesse based on the handling of his incoming legal mail and outgoing mail may proceed.  His claim in Count IV based on the delivery of his incoming personal mail is DISMISSED with leave granted to amend.

(2) Pitts is GRANTED the right to conduct early discovery, limited to identifying the Doe Defendants named in Count IV in connection with the handling of Pitts's mail, which must be accomplished by March 8, 2021.  By that time, Pitts SHALL either notify the Court of the unnamed prison mailroom employees' identities or explain what steps he has taken to determine their

identities.  Pitts's other claims against Doe Defendants are DISMISSED with prejudice.

(3) Pitts's Fourteenth Amendment claims in Counts II and III against Williamson, Uedoi, Fernando, and Levi based on his adjustment hearings may proceed.

(4) Pitts's claims for damages against official capacity Defendants are DISMISSED with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1).

(4) Pitts's remaining retaliation, access to the courts, threat to safety, denial of medical care, conditions of confinement, and state law claims are DISMISSED with leave granted to amend.  Pitts may file an amended pleading that cures the noted deficiencies in these claims, if possible, on or before March 8, 2021.

(6) IN THE ALTERNATIVE, Pitts may notify the court in writing on or before March 8, 2021, that he elects to proceed with his First Amendment claims in Counts IV and V against Silva, Kami, and Jesse based on the handling of his incoming legal mail and outgoing mail, and his Fourteenth Amendment claims in Counts II and III against Williamson, Uedoi, Fernando, and Levi based on his adjustment hearings.

If Pitts fails to file either an amended pleading or a notice of election, the Court will direct the FAC be served as limited by this Order.

(7)  The Clerk is DIRECTED to send Pitts a prisoner civil rights complaint form so that he may comply with the directions of this Order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 21, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JOSEPH PITTS VS. NOLAN ESPINDA, ET AL.; CV 20-00431 LEK-KJM; ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING EARLY DISCOVERY**