IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOSEPH PITTS, #A0259019, | CIV. NO. 20-00431 LEK-KJM |
| Plaintiff, | ORDER DISMISSING SECOND AMENDED COMPLAINT IN PART AND DIRECTING SERVICE |
| v. | |
| NOLAN ESPINDA, *et al.*, | |
| Defendants. | |

## ORDER DISMISSING SECOND AMENDED COMPLAINT IN PART AND DIRECTING SERVICE

Before the Court is pro se Plaintiff Joseph Pitts' ("Pitts") Second Amended

Complaint ("SAC"). ECF No. 24. Pitts asserts claims under 42 U.S.C. § 1983 and

state law. Pitts alleges that Defendants, officials of the Department of Public

Safety ("DPS") and the Oahu Community Correctional Center ("OCCC"),[1]

---

[1] Pitts names as Defendants Nolan Espinda, Francis Sequiera, Caesar Alteris, Lei Silva, Calvert Williamson, Ahn Uedoi, Urita Levi, Jessica Ashley Fernando, Sergeant Anderson, Sara Hashimoto, "John and Jane Doe(s) 1 thru 10," Officer Defiesta, Gavin Takenaka, Tiare Seaton-Brisette, Dr. Caroline Mee, Tina Agaran, Neil Hayase, Brian Watanabe, "State Dietician," Jesse Saribay, Robin Kami, Kristi Broders, Lance Agluba, Kirk Kato, Marco Valenzuela-Tapia, Elanor Silva, Justin Parriera, Sione Liufau, and Tapuni Lualemana. ECF No. 24 at 1–2. Pitts does not say if he is suing these Defendants in their individual or official capacities. Although Pitts alleges that one of his complaints to prison officials reached Takenaka, Pitts does not claim that Takenaka violated his rights. Takenaka is TERMINATED as a Defendant.

violated the law during his pretrial confinement at the OCCC.[2]  The Court has

screened the SAC pursuant to 28 U.S.C. §§ 1915(e) and 1915A(a), and finds that it

states claims for relief against Defendants Willamson, Uedoi, Fernando, Levi,

Seaton-Brisette, Silva, and Kami in their individual capacities.  Pitts' other claims

are DISMISSED, as specified below.[3]

## I. <u>STATUTORY SCREENING</u>

The Court is required to screen all in forma pauperis prisoner pleadings

against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).

*See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or

complaints that are frivolous, malicious, fail to state a claim for relief, or seek

damages from defendants who are immune from suit must be dismissed.  *See*

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v.*

*Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same

standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).

*See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under

---

[2] Pitts is currently incarcerated at the Halawa Correctional Facility ("HCF").  *See* VINE, https://www.vinelink.com/classic/#/home/site/50000 (follow "Find an Offender," enter "Pitts" in "Last Name" field and "Joseph" in "First Name" field) (last visited June 24, 2021).

[3] The dismissal of certain claims without prejudice does not prevent Pitts from moving to amend his pleading under Fed. R. Civ. P. 15.  Any claims realleged in this action, however, must comply with Fed. R. Civ. P. 18 ("Joinder of Claims"), Fed. R. Civ. P. 20 ("Permissive Joinder of Parties"), and any other order of this Court.

this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

Rule 12 is read in conjunction with Rule 8(a)(2) when screening a complaint; Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). The "mere possibility of misconduct," or an "unadorned, the defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard. *Id.* at 678–79 (citations omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a

claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. <u>BACKGROUND</u>[4]

Pitts was a pretrial detainee at the OCCC between January and November 2020.[5]  ECF No. 24 at 5.  On "at least" four or five occasions during this period, Pitts was housed in Module 1, the OCCC's "mental health module."  *Id.*

The Court received Pitts' original Complaint regarding his experiences at the OCCC on October 7, 2020.  ECF No. 1.  The Court issued an Order Dismissing Complaint in Part with Partial Leave to Amend on November 6, 2020.  ECF No. 6.

The Court received Pitts' First Amendment Complaint ("FAC") on December 23, 2020, ECF No. 13, and his Supplemental Pleading on January 4, 2021, ECF No. 14.  The Court issued an Order Dismissing First Amended Complaint in Part and Directing Early Discovery on January 21, 2021.  ECF No. 16.

---

[4]  Pitts's factual allegations are accepted as true.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[5]  Pitts is currently awaiting retrial in *State v. Pitts*, No. 1PC091000097 (Haw. 1st Cir. Ct.).  *See* Hawaii State Judiciary, https://www.courts.state.hi.us/ (follow "eCourt Kokua*," select "Click Here to Enter eCourt* Kokua," select "Case Search," and enter "1PC091000097" in "Case ID or Citation Number" field) (last visited June 24, 2021).  A jury convicted Pitts of attempted murder in the second degree, and a judge sentenced him to life imprisonment with the possibility of parole.  *See State v. Pitts*, 146 Hawaiʻi 120, 127, 456 P.3d 484, 491 (2019).  The Hawaiʻi Supreme Court, however, subsequently vacated the judgment of conviction and sentence and remanded the case for further proceedings.  *Id.* at 138, 456 P.3d at 502.

Pitts filed the SAC on June 9, 2021.  ECF No. 24.  In Count I, Pitts alleges a range of violations by Espinda, Sequiera, Alteris, Sgt. Anderson, Seaton-Brisette, and ten unnamed defendants.  ECF No. 24 at 3–4.  Pitts generally claims that these Defendants:  (1) failed to properly train and supervise staff on the proper care of pretrial detainees with mental health issues; (2) failed to protect him from harm, abuse, and the denial of adequate food, water, and warmth; (3) failed to provide him with a sink; (4) failed to "maintain humane housing" and provided inmates with inadequate food; (5) failed to ensure that he received water, warmth, blankets, a clean smock, and cleaning supplies; (6) failed to properly monitor staff; (7) failed to prevent abuse, neglect, and food deprivation; (8) failed to install adequate video surveillance equipment; (9) failed to establish and enforce appropriate policies and procedures; (10) left policies in procedures in place; (11) disregarded inmate safety, well-being, and their human rights; and (12) promoted a "culture of acceptance."[6]  *Id.*

In Count II, Pitts alleges that Williamson, Uedoi, and Defiesta violated his rights in connection with a February 10, 2020 adjustment hearing.  *Id.* at 12.  During the hearing, Pitts was charged with and found guilty of fighting with

---

[6] Although Pitts does not name the State of Hawaii as a Defendant, he asserts that it is responsible for the training, supervision, and discipline of all "correctional employees."  ECF No. 24 at 4.  He also asserts that the State has a duty not to enforce or continue procedures and customs that create a substantial likelihood that prisoners would be subjected to cruel and unusual punishment.  *Id.*

another person.  *Id.*  According to Pitts, he acted in self-defense when two gang members attacked him "in retaliation for his complaints and grievances against [the OCCC]."  *Id.*  Pitts identified two witnesses who would have corroborated his version of events, but they were not called to testify during the hearing.  *Id.*  Pitts also requested surveillance camera footage, but he was not allowed to see it and the video was not presented during the hearing.  *Id.*

In Count III, Pitts alleges that Fernando, Levi, and Uedoi violated his rights during a July 9, 2020 adjustment hearing.  *Id*. at 14.  During this hearing, Pitts was charged with and found guilty of assaulting a person without a weapon or dangerous instrument.  *Id*.  Pitts claims that he was fighting with another inmate in the OCCC's kitchen when Officer Lamie (who is not named as a defendant) ordered the inmates to move into a cell, where the inmates were locked inside.  *Id*.  According to Pitts, he "requested" two witnesses, but they were not called during the July 9, 2020 hearing.  *Id*.  Pitts also claims that he requested surveillance camera footage that would have shown where the fight began, where it ended, and the location of correctional officers at the time, but the video was not reviewed during his hearing.  *Id*.  Pitts further claims that he was not allowed to provide a written statement in his defense.  *Id*.

In Count IV, Pitts alleges that Silva, Kami, and ten unidentified defendants opened his properly marked legal mail outside his presence, delayed his outgoing

mail, and delayed or returned his incoming personal mail.[7]  *Id*. at 20.  Pitts claims

that prison officials opened properly marked legal mail outside his presence on

January 31, 2020, February 1, 2020, and September 5, 2020.[8]  *Id*. at 21–22.  Pitts

also claims that outgoing legal mail he had given to prison officials on August 12,

2020, was not mailed until August 25, 2020, a motion he had provided to prison

officials on August 2, 2020, was not mailed until August 12, 2020, and a habeas

petition he had given to prison officials on September 3, 2020, was not mailed until

September 9, 2020.  *Id.* at 22.  Pitts further claims that some of his incoming

personal mail was returned as undeliverable.  *Id*. 21.

    In Count V, Pitts alleges that Espinda, Alteris, Sequiera, Silva, and ten

unidentified defendants:  (1) failed to train adequately and supervise mailroom

staff; (2) failed to protect him from retaliation and reprisal for "accessing the

courts"; (3) failed to protect his constitutional rights; (4) failed to enforce

mailroom policies and procedures; (5) failed to address and correct "repeated

violations of mail procedures and adjustment hearing procedures"; and (6)

consciously disregarded risks to his rights.  *Id*. at 23.

---

[7] Pitts also refers to Adult Corrections Officer Jesse in Count IV.  *See* ECF No. 24 at 20.  Jesse, however, is not named as a Defendant in the SAC.  *See id.* at 1-2.

[8]  Although Pitts also alleges that prison officials opened mail from an attorney on February 7, 2020, he does not claim that this mail was properly marked as legal mail.  *See* ECF No. 1 at PageID # 100.

Pitts asks for:  (1) an order directing prison officials to take "corrective action to stop the abuse, denial of food and denial of medical care" at the OCCC; (2) $25,000 in "compensation"; (3) a declaratory judgment that prison officials violated his constitutional rights; and (4) "all other applicable remedies."  *Id.* at 24.

### III.  <u>DISCUSSION</u>

### A.  **Legal Framework for Claims under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Belgau v. Inslee*, 975 F.3d 940, 946 (9th Cir. 2020).  Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167 (9th Cir. 1980).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).  Thus, a plaintiff must allege that he suffered a

specific injury as a result of a particular defendant's conduct and must affirmatively link that injury to the violation of his rights.

## B. Eleventh Amendment

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-03 (1984). In general, the Eleventh Amendment does not bar official-capacity suits for prospective relief to enjoin alleged ongoing violations of federal law. *See Wolfson v. Brammer*, 616 F.3d 1045, 1065-66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). Nor does the Eleventh Amendment bar suits for damages against state officials in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Pitts refers to the "State of Hawaii" in Count I and Count V. *See* ECF No. 24 at 3–4, 23. Pitts does not include the State of Hawaii in the caption of the SAC. Even if he had, any claims against the State are barred by the Eleventh Amendment and therefore DISMISSED with prejudice. *See Neal v. Shimoda*, 131 F.3d 818, 832 n.17 (9th Cir. 1997) ("We . . . agree with the district court that the State of

Hawaii is entitled to the protections of sovereign immunity under the Eleventh Amendment." (citation omitted)).

Pitts does not say if the named Defendants are being sued in their official or individual capacities.  *See* ECF No. 24 at 1–2.  To the extent Pitts seeks monetary damages from Defendants in their official capacities, those claims are barred by the Eleventh Amendment and DISMISSED with prejudice.  *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity."). To the extent Pitts seeks prospective, injunctive relief from Defendants in their official capacities based on events at the OCCC, those claims are DISMISSED as moot because Pitts was transferred from the OCCC to the HCF.  *See Pride v. Correa*, 719 F.3d 1130, 1138 (9th Cir. 2013) ("When an inmate challenges prison conditions at a particular correctional facility, but has been transferred from the facility and has no reasonable expectation of returning, his claim is moot." (citation omitted)).  To the extent Pitts is seeking monetary damages from Defendants in their individual capacities, those claims are not barred by the Eleventh Amendment.

## C. Standing

In Count I, Pitts makes various allegations based on injuries allegedly suffered by other inmates at the OCCC.  *See* ECF No. 24 at 3–9.  Pitts does not have standing to assert these claims.

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Id*.

Three elements make up the "irreducible constitutional minimum of standing": (1) injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 55, 560-61 (1992); *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 825 (9th Cir. 2020). The party invoking federal jurisdiction bears the burden of establishing these elements.  *Lujan*, 504 U.S. at 561.

Regarding prudential limitations, the Supreme Court "has held that when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."  *Warth*, 422 U.S. at 499.  Moreover, even when the plaintiff has alleged injury sufficient to meet the "case or controversy" requirement, the

11

Supreme Court "has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Id*.; *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1118 (9th Cir. 2015) ("[C]ourts have treated the limitation on third-party standing as a prudential principle that requires plaintiffs to assert their own legal rights.").

In Count I, Pitts makes a variety of allegations based on the experiences of other inmates at the OCCC.  For example, he claims that prison officials assaulted other inmates, ECF No. 24 at 5–6, inmates assaulted other inmates, *id.* at 5, prison officials threatened inmates, *id.* at 6, prison officials denied food to other inmates, *id.* at 7, and prison officials failed to provide medical care to other inmates, *id.* Although Pitts may assert his own legal rights and interests, he "cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth*, 422 U.S. at 499; *Darring v. Kincheloe*, 783 F.2d 874, 877 –78 (9th Cir. 1986) (concluding state prisoner lacked third-party standing to assert the rights of other inmates).  If Pitts is seeking to represent other inmates, he may not do so.  *See Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ("A litigant appearing in propria persona has no authority to represent anyone other than himself."); *see also Agrio v. Gomez*, 17 F.3d 393, 393 (9th Cir. 1994) (unpublished) (same); *Jorss v. Schwarzenegger*, 168 F. App'x 825, 826 (9th Cir. 2006) ("The district court

properly dismissed the complaint because a plaintiff acting pro se cannot represent others.").

Pitts' claims in Count I based on the alleged experiences of other inmates at the OCCC are DISMISSED with prejudice.

## D. First Amendment Claims

### 1. Retaliation

Pitts alleges in Counts I and IV that prison officials retaliated against him because of his complaints and grievances.[9]  ECF No. 24 at 7, 8, 20.

The First Amendment guarantees a prisoner the right to seek redress of grievances from prison authorities. *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015).  "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  A retaliation claim has five basic elements: (1) an assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that prisoner's protected conduct, and that such action; (4) chilled the inmate's exercise of his First Amendment rights; and (5) the

---

[9] In Count II, Pitts alleges that two other inmates "attacked" him in retaliation for his complaints and grievances.  ECF No. 24 at 12.  Pitts fails to state a claim because he has not plausibly alleged that these inmates were acting under color or law.  *See Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1209 (9th Cir. 2002) ("Section 1983 liability extends to a private party where the private party engaged in state action under color of law and thereby deprived a plaintiff of some right, privilege, or immunity protected by the Constitution or the laws of the United States.").

action did not reasonably advance a legitimate correctional goal. *Id.* "To prevail on a retaliation claim, a plaintiff must show that his protected conduct was 'the 'substantial' or 'motivating' factor behind the defendant's conduct.'" *Id.* at 1271 (citation omitted).

Pitts alleges in Count I that: (1) Anderson denied him a hot meal one night because Pitts had "complained to Lt. Torres about the food," ECF No. 24 at 7; (2) "[s]ecurity staff" were unhappy about the number of inmates in Module I, so they retaliated against Pitts by "starv[ing]" him, *id.* at 8; and (3) Anderson and Sergeant Koma (who is not named as a Defendant) threatened Pitts with bodily harm and the denial of food "for speaking out and reporting the abuse to lieutenant Torres," *id.* Pitts alleges in Count IV that prison officials in the mailroom retaliated against him because of his grievances and complaints by opening his incoming legal mail and returning his incoming personal mail. *Id.* at 20.

Regarding Pitts' claim that Anderson retaliated against him by withholding one hot meal, Pitts does not say either when this allegedly occurred or when he had complained to Lt. Torres. *See id.* at 7. Likewise, to the extent Pitts claims that Anderson threatened him with bodily harm and the denial of food because of reports Pitts had made to Lt. Torres, Pitts fails to say either when he spoke with Lt. Torres or when Anderson allegedly threatened him. *See id.* at 8. Pitts fails, therefore, to provide details or a timeline linking his grievances and complaints to

14

these alleged incidents of mistreatment.  *See Latonie v. Mun*, No. 13-00317 HG/RLP, 2013 WL 3327942, at *3 (D. Haw. July 2, 2013) ("Plaintiff provides insufficient facts to indicate that any Defendant retaliated against him for pursuing a prison grievance.").

Regarding Pitts' claim that "[s]ecurity staff" starved him, *id.* at 8, he does not identify the prison officials involved, when this occurred, or how it related to protected conduct.  Similarly, Pitts fails to allege a plausible connection between his "grievances and complaints" and the alleged misconduct of prison officials in the mailroom.  Pitts does not allege that his various complaints related to the mailroom, nor does he identify who in the mailroom was aware of his protests.  Merely referencing retaliation is not enough.  *See Trujillo v. Gomez*, 698 F. App'x 368, 368 (9th Cir. 2017) ("The district court properly dismissed [prisoner's] retaliation claim because [prisoner] failed to allege facts sufficient to show that [prisoner's] filing of a grievance was the substantial or motivating factor behind defendants' alleged conduct.").  Pitts retaliation claims are DISMISSED without prejudice.

## 2. Mail

Pitts alleges in Count IV that Silva and Kami opened his legal mail without him being present, delayed his outgoing mail, and interfered with his incoming personal mail.[10]  ECF No. 24 at 20–22.

Prisoners have a First Amendment right to send and receive mail while incarcerated.  *Nordstrom*, 856 F.3d at 1271.  A prison may adopt regulations which impinge on an inmate's constitutional rights, however, "if those regulations are 'reasonably related to legitimate penological interests.'"  *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  "Legitimate penological interests include security, order, and rehabilitation."  *Witherow*, 52 F.3d at 265 (internal quotation marks omitted).  Restrictions on outgoing personal correspondence "must have a closer fit between the regulation and the purpose it serves than incoming mail restrictions."  *Nordstrom*, 856 F.3d at 1273.

The First Amendment also protects a prisoner's right to be present when his properly marked legal mail is opened.  *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017).  Prison officials may require legal mail to be "specially

---

[10] Pitts also names other "mailroom defendants," including Saribay, Broders, Agluba, Kato, Valenzuela-Tapia, Silva, Parriera, Liufau, and Lualemana.  ECF No. 24 at 2.  Pitts does not refer to any of these Defendants, however, in Count IV.  Any claims against these Defendants based on the allegations in Count IV are DISMISSED without prejudice.  Likewise, any claims against "Jane and John Doe(s) 1 through 10" based on the allegations in Count IV are DISMISSED without prejudice.

marked as originating from an attorney, with his name and address being given, if they are to receive special treatment." *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974). "Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996).

Pitts alleges in Count IV that Silva and Kami opened properly marked legal mail from an attorney outside his presence that had been sent on January 31, 2020, February 1, 2020, and September 5, 2020. ECF No. 24 at 21–22. Pitts also claims that outgoing legal mail he had given to prison officials on August 12, 2020, was not mailed until August 25, 2020, a motion he had provided to prison officials on August 2, 2020, was not mailed until August 12, 2020, and a habeas petition he had given to prison officials on September 3, 2020, was not mailed until September 9, 2020. *Id.* at 22. Pitts' claims against Silva and Kami based on the alleged opening of his legal mail outside his presence and the alleged delay in sending his outgoing mail may proceed.

Regarding Pitts' claim that some of his incoming personal mail was returned as undeliverable or not delivered at all, *id.* at 21, he fails to state a claim. Pitts fails to say when the various letters were sent and how much time he allowed for their delivery. He does not say whether the letters were properly addressed and had adequate postage. Pitts' claim in Count IV based on the delivery of his incoming personal mail is DISMISSED without prejudice.

17

### 3.  Access to the Courts

For Counts I through V, Pitts marks a box indicating that he was denied access to the courts.  *See* ECF No. 24 at 3–23.  "The First Amendment guarantees a prisoner . . . a right of meaningful access to the courts." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015).  Claims for the denial of access to the courts may arise from the hindrance of "a litigating opportunity yet to be gained" or from the loss of a suit that cannot now be tried." *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002).  As a threshold requirement to an access to the courts claim, a plaintiff must allege an "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996).  An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  *Id*. at 348 (internal quotation marks and citation omitted).  Failure to allege an actual injury to a "'non-frivolous legal claim'" is "fatal."  *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting *Lewis*, 518 U.S. at 353 & n.4).  Pitts does not allege that he was unable to meet a filing deadline or present a claim.  Because Pitts fails to allege actual injury, despite having three opportunities to do so, his access-to-the-courts claims are DISMISSED with prejudice.

## E.  Fourteenth Amendment Claims

### 1.  Adjustment Hearings

Pitts alleges in Counts II and III that he was denied due process during adjustment hearings on February 10, 2020, and July 9, 2020, respectively.  ECF No. 24 at 12–19.

Although prisoners may claim the protections of the Due Process Clause, the full panoply of rights due a defendant in criminal proceedings does not apply to prison disciplinary proceedings.  *Wolff*, 418 U.S. at 556.  "[T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  *Id*.  The Supreme Court has concluded that when a prisoner faces disciplinary charges, prison officials must provide the prisoner with:  (1) written notice of the claimed violation at least twenty-four hours before the disciplinary hearing; (2) an opportunity to present documentary evidence and call witnesses "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; (3) the opportunity to seek assistance where the charges are complex or the inmate is illiterate; and (4) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action taken.  *Id*. at 563–70.

Regarding the opportunity to call witnesses, although "[j]ail officials need not provide inmates an unfettered right to call witnesses, . . . they must make the

decision whether to allow witnesses on a case-by-case basis, examining the potential hazards that may result from calling a particular person." *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003).  The prison officials must also eventually explain why witnesses were not allowed to testify.  *Ponte v. Real*, 471 U.S. 491, 497 (1985).

Pitts alleges in Count II that Uedoi and Williamson did not hear from his two witnesses during a February 10, 2020 disciplinary hearing, and they never "articulated or stated why [Pitts's] witnesses were not called[.]"  ECF No. 24 at 12–13.  Pitts' claims against Williamson and Uedoi in Count II related to his February 10, 2020 disciplinary proceeding may proceed.[11]

Pitts alleges in Count III that Fernando, Levi, and Uedoi did not allow him to call two witnesses or to present a written statement in his defense during a July 9, 2020 disciplinary hearing.  *Id.* at 14 –19.  Pitts further claims that he was not allowed to review surveillance video footage in connection with either disciplinary hearing.  *Id.* at PageID ## 95, 97.  Pitts's claims against Williamson, Uedoi, Fernando, and Levi in Counts II and III related to his February 10, 2020, and July 9, 2020 disciplinary hearings may proceed.

---

[11] Although Pitts alleges that Defiesta did not speak with his witnesses while investigating the allegations against him, Pitts does not claim that Defiesta's actions denied him due process during the February 10, 2020 adjustment hearing.  Pitts' claims against Defiesta in Count II are DISMISSED without prejudice.

## 2. Conditions of Confinement

Where a pretrial detainee challenges conditions of confinement, such claims "arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (internal quotation marks omitted). The standard under the Fourteenth Amendment for a pretrial detainee "differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment." *Olivier v. Baca*, 913 F.3d 852, 858 (9th Cir. 2019) (citation omitted).

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979);[12] *see also Block v. Rutherford*, 468 U.S. 576, 583-85 (1984). "Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense[.]" *Bell*, 441 U.S. at 537. "Loss of freedom of choice and privacy are inherent

---

[12] Although *Bell* considered a claim under the Due Process Clause of the Fifth Amendment, the same standards apply under the Due Process Clause of the Fourteenth Amendment. *See Paul v. Davis*, 424 U.S. 693, 702 n.3 (1976) ("[T]he Fourteenth Amendment imposes no more stringent requirements upon state officials than does the Fifth upon their federal counterparts.").

incidents of confinement," and the fact that detention "interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Id.*

Absent a showing of an expressed intent to punish by prison officials, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. Thus, "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting[.]" *Id.* at 540.

Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," *id.* at 547, "unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security," *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 322-23 (2012). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell*, 441 U.S. at 540 n.23 (internal quotation marks omitted).

22

A pretrial detainee's conditions of confinement claim is governed by a purely objective standard.  *See Gordon*, 888 F.3d at 1124–25.[13]  A pretrial detainee must therefore show that: (1) a particular defendant made an intentional decision with respect to the conditions under which the pretrial detainee was confined; (2) those conditions put him at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in similar circumstances would have appreciated the high degree of risk—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the detainee's injuries. *Id.*

With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that "turns on the facts and circumstances of each particular case." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (internal quotation marks omitted).  "A court must make this determination from the

---

[13] The Ninth Circuit has not expressly extended the objective deliberate indifference standard to all pretrial detainee conditions of confinement claims, beyond denial of medical care, failure to protect, and excessive force claims, although *Gordon* suggests that it will.  *See Gordon*, 888 F.3d at 1120, 1124 & n.2 (citing *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) (extending objective deliberate indifference standard to all pretrial detainee conditions of confinement claims)); *see also Pitts v. Ige*, No. 18-00470 LEK-RT, 2019 WL 3294799, at *10 (D. Haw. July 22, 2019) (stating that deliberate indifference claims arising under the Fourteenth Amendment "are governed by a wholly objective standard").

perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

### a. Failure to Protect

Pitts alleges in Count I that prison officials "failed to protect" him. ECF No. 24 at 3. He generally claims that Anderson facilitated, encouraged, and ordered attacks on inmates in Module 1.[14] Id. at 5.

The elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc).

Pitts fails to allege how Anderson's conduct put him at substantial risk of suffering serious harm. Although Pitts generally claims that Anderson facilitated,

---

[14] Pitts makes the same claims against Sergeant Koma and ACO Scholtis, who are not named as Defendants. ECF No. 24 at 5.

encouraged, and ordered attacks against inmates in Module 1, he does not allege that Anderson was involved with an attack on him in any way. Pitts' failure-to-protect claim against Anderson is DISMISSED with prejudice.

### b. Denial of Medical Care

Pitts alleges in Count III that Seaton-Brisette denied him medical care on July 9, 2020, after Pitts was involved in a fight with another inmate. ECF No. 24 at 14–19.

Alleged violations of the right to adequate medical care brought by pretrial detainees are also evaluated under an objective deliberate indifference standard. *Gordon*, 888 F.3d at 1124–25. Under this standard, the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Id*. at 1125.

Pitts claims that he was in "extreme pain" when he was taken to the medical unit on July 9.  ECF No. 24 at 15.  Pitts' hand was swollen, and he could not make a fist.  *Id.*  According to Pitts, Seaton-Brisette provided him "no care at all."  *Id.* at 16.  She did not evaluate his hand, she refused to take pictures of his injuries, and she did not provide him with ice or any other pain relief.  *Id.* at 14–16.  Pitts later learned that his hand was fractured.  *Id.* at 15.  Pitts' claims that his finger is "permanently disfigured" because of his injuries, and he cannot straighten it.  *Id.* at 17.  Pitts' denial-of-medical-care claim against Seaton-Brisette may proceed.[15]

### c.  Other Conditions at the OCCC

Pitts also makes various allegations regarding other conditions at the OCCC. *See* ECF No. 24 at PageID # 89.

In Count I, Pitts alleges that he was forced to live in a cell the "size of a closet" with up to four other inmates.  ECF No. 24 at 6.  According to Pitts, his cell was "freezing," but inmates received only a "smock" and no blanket.  *Id.*  Pitts does not say, however, exactly when he experienced these conditions or who was responsible for them.  While Pitts claims that he described these conditions to Defendant Hashimoto and another psychologist, Micah (who is not named as a Defendant), he does not allege that Hashimoto was responsible for the conditions

---

[15] Pitts also claims that other medical professionals denied him medical care, *see* ECF No. 24 at 16–19, but he does not name any of them as Defendants.

in his cell, nor has Pitts plausibly alleged that Hashimoto had the ability to change the conditions in his cell.  Pitts therefore fails to state a claim based on the conditions in his cell.

Pitts also claims that prison officials "starved" him.  ECF No. 24 at 6.  Pitts does not say, however, who deprived him of food, when this happened, or how often it occurred.  Indeed, Pitts acknowledges that at some point he began receiving "double portion meals."  *Id.* at 9.  While Pitts claims that Anderson took away his hot dinner "one night," *id.* at 7, Pitts does not say when this allegedly occurred, nor does he allege that Anderson entirely denied him food.  Pitts fails to state a claim based on the alleged denial of one hot meal.  *See Garnica v. Wash. Dep't of Corr.*, 965 F. Supp. 2d 1250, 1267 (W.D. Wash. 2013) (noting that prisoner "has no constitutional right to be served a hot meal), *aff'd*, 639 F. App'x 484 (9th Cir. 2016).

Pitts further claims that he was denied water.  ECF No. 24 at 7.  According to Pitts, he asked for water on "a number of occasions" and was told that he needed to wait for it.  *Id.*  Pitts must drink a lot of water because Pitts because he takes Lithium.  *Id.*  Once again, however, Pitts does not say when these alleged events took place, who he spoke with, or how long he had to wait before he received water.  While Pitts again claims that he told Micah and Defendant Hashimoto about these issues, *id.*, he does not allege that they denied him of water or were

able to provide him a drink when he needed one. Pitts fails to state a claim based on the denial of water. Pitts's claims based on other conditions at the OCCC are DISMISSED without prejudice.

## F. Supervisory Liability

Pitts names as Defendants numerous supervisory officials of the DPS and OCCC, including Espinda, Sequiera, Alteris, Watanabe, Mee, and the "state dietician" in Count I, ECF No. 24 at 3, 9, Mee, Agaran, and Hayase in Count III, *id.* at 19, Silva in Count IV, *id.* at 20, and Espinda, Alteris, Sequiera, and Silva in Count V, *id.* at 23.

"Vicarious liability is inapplicable to . . . § 1983 suits, [and] a plaintiff must plead that each Government-official defendant, through [his] own individual actions, has violated the Constitution," to plead a plausible claim for relief. *Iqbal*, 556 U.S. at 676; *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (holding supervisor is liable under 42 U.S.C. § 1983 only on a showing of personal involvement in the constitutional deprivation or "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation). "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. That is, supervisory officials "cannot be held liable unless they themselves" violate a constitutional right. *Id.* at 683.

"A supervisory official is liable under § 1983 so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).  This causal connection  "can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08 (internal quotation marks and citations omitted) (alterations in original).  Thus, a supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

As the Court explained above, Pitts states a colorable claim against Silva based on the alleged opening of his legal mail outside his presence and the alleged delay in sending his outgoing mail.  Pitts' claims against Silva in Counts IV and V may therefore proceed.

29

Pitts' claims against Espinda, Sequiera, Altaris, Watanabe, Mee, the "state dietician," Agaran, and Hayase in counts I, III, and V, however, are based on sweeping, conclusory allegations that these supervisory officials failed to train and supervise prison officials, and enforce policies and procedures.  *See* ECF No. 24 at 3–4, 9, 19, 23.   The Court is not bound, however, to accept as true a legal conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555.  Pitts does not allege that any of these supervisory officials were directly involved in the allegedly unconstitutional conduct.  Nor does he plausibly allege that these supervisory officials were aware of the allegedly unconstitutional conduct against him and acquiesced to it.  Based on the SAC, Court cannot discern each Defendant's causal role in an alleged constitutional deprivation.  *Vazquez v. County of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020) ("[A] supervisor is liable for the acts of his subordinates if the supervisor . . . knew of the violations [of subordinates] and failed to act to prevent them." (internal quotation marks and citation omitted)).  Pitts' claims against Espinda, Sequiera, Alteris, Watanabe, Mee, the "state dietician," Agaran, and Hayase in Counts I, III, and V are DISMISSED without prejudice.

## H.  State Law Claims

Pitts states that he is pursuing claims under "state tort law."  ECF No. 24 at 1.  Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court

has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir.1997).

To the extent Pitts claims that Seaton-Brisette was negligent in denying him medical care, ECF No. 24 at 16, that claim may proceed. To the extent Pitts claims that Mee, Agaran, and Hayase are liable for negligence, for the reasons set forth *supra*, Pitts fails to state a plausible claim against any of these supervisory prison officials. The Court therefore declines to exercise supplemental jurisdiction over any state-law claims against Mee, Agaran, or Hayase. *See Gustafson v. Fukino*, No. 09-00565 SOM/KSC, 2010 WL 2507556, at *9 (D. Haw. June 18, 2010) ("When, as here, the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (internal quotation marks omitted)). Those claims are DISMISSED without prejudice.

## V. <u>CONCLUSION</u>

(1) Pitts' due process claims against Williamson and Uedoi in Count II and against Fernando, Levi, and Uedoi in Count III may proceed.

31

(2) Pitts' denial-of-medical-care claim against Seaton-Brisette in Count III may proceed.  His state law negligence claim against Seaton-Brisette may also proceed.

(3) Pitts' claims against Silva and Kami in Count IV based on the alleged opening of his legal mail and delay in sending his outgoing mail may proceed.

(4) Pitts' remaining claims are DISMISSED as specified above.

## V.  <u>SERVICE ORDER</u>

IT IS HEREBY ORDERED:

(1)  The Clerk shall send the U.S. Marshal a copy of this Order, the Second Amended Complaint, ECF No. 24, and one separate completed summons each for Defendants Williamson, Uedoi, Fernando, Levi, Seaton-Brisette, Silva, and Kami. The U.S. Marshal shall open a file and retain these documents for use in the event that any Defendant declines to waive service of the summons.

(2)  Per agreement with the Department of Public Safety, the Clerk shall provide by electronic means to DPS litigation coordinators Laurie Nadamoto, Esq. and Shelley Harrington, Esq.: (a) a copy of the Second Amended Complaint, ECF No. 24, and any exhibits, and a completed Notice of Lawsuit and Request for Waiver of Service of Summons form separately addressed to Defendants Williamson, Uedoi, Fernando, Levi, Seaton-Brisette, Silva, and Kami; and (b) two

completed Waiver of Service of Summons forms each for Williamson, Uedoi, Fernando, Levi, Seaton-Brisette, Silva, and Kami.

(3)  Defendants Williamson, Uedoi, Fernando, Levi, Seaton-Brisette, Silva, and Kami shall have 30 days after the request for waiver of service of summons is sent to return the waiver to the U.S. Marshal, who shall file the waiver with the court.  If Defendants Williamson, Uedoi, Fernando, Levi, Seaton-Brisette, Silva, and Kami fail to do so within that time, the U.S. Marshal shall NOTIFY THE COURT, who will direct the U.S. Marshal to personally serve the summons and complaint on Defendants Williamson, Uedoi, Fernando, Levi, Seaton-Brisette, Silva, and Kami.  A personally served Defendant will be required to pay the costs of service.

(4)  Defendants Williamson, Uedoi, Fernando, Levi, Seaton-Brisette, Silva, and Kami shall file a response to the Second Amended Complaint within 60 days after electronic service if formal service is waived, or 45 days if service of the summons is not waived.

(5)  Pitts shall notify the court within one week of any change of address. This notice shall contain only information about the change of address and its effective date and shall not include requests for other relief.  Failure to do so may result in dismissal of the action for failure to prosecute under Federal Rule of Civil Procedure 41(b).

(6)  After Defendants Williamson, Uedoi, Fernando, Levi, Seaton-Brisette, Silva, and Kami have filed a response to the Second Amended Complaint, Pitts' documents are deemed served on any Defendant or their attorney(s) who participate in the court's Case Management Electronic Case Filing (CM/ECF) system.  The U.S. Marshal is not responsible for serving documents after service of the operative pleading.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, August 18, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JOSEPH PITTS VS. NOLAN ESPINDA, ET AL.; CV 20-00431 LEK-KJM; ORDER DISMISSING SECOND AMENDED COMPLAINT IN PART AND DIRECTING SERVICE**